## STATE *ex rel* WM. H. STANDISH *vs.* NELSON F. BOUCHER.

Opinion filed May 9th, 1893.

**Trustees of State Institutions—Tenure of Office.**

> Section 1, Ch.,93, Laws 1889, which provides for the appointment of trustees of the state institutions, including the penitentiary, examined and construed. The section contemplates that such trustees shall (except in cases of vacancy) be appointed by the concurrent action of the governor and senate, and, when so appointed, that such trustees shall continue in office, not only until the expiration of the prescribed term for which they are appointed, but beyond that period, and until their successors are chosen by the action of both the governor and senate. It is accordingly *held*, that trustees who were appointed by the governor, and confirmed by the senate at its session in 1891, for a term of two years, are lawfully entitled to hold over after the expiration of the term of two years for which they were appointed, notwithstanding the fact that the governor in due time nominated their successors, and the senate which assembled in 1893 adjourned without confirming them, or confirming any successors of the trustees appointed in 1891.

**Expiration of Prescribed Term—When Vacancy.**

> The expiration of the prescribed term, when coupled with the fact that the senate adjourned without confirming successors of trustees in office under a former appointment, will not operate to create a vacancy in the office, which, under the statute, can be temporarily filled by the governor. The vacancies contemplated by the statute are actual vacancies, and such as arise from death, resignation and like causes.

**Power of Governor to Fill Vacancies.**

> Under § 78 of the state constitution, the appointing power of the governor is confined to filling vacancies in office in cases where no other mode is provided by the constitution or laws for filling the same.

Appeal from District Court, Burleigh County; *Winchester*, J.

Action by the State of North Dakota, on the relation of William H. Standish, as attorney general, and Daniel Williams, against Nelson F. Boucher, to try title to the office of warden of the state penitentiary. Judgment for defendant. Plaintiff appeals. Affirmed. .

*W. H. Standish, Atty. General*, for appellant.

The executive possesses the power of removal from appointive offices and by appointing Ward and Taylor for the places

that had been held by Donnelly and Van Horn as trustees of the penitentiary, this operated as a removal and created a vacancy, even had not that vacancy taken place by a previous lapse of their two years term. *Territory* v. *Cox*, 6 Dak. 501; *Blake* v. *United States*, 103 U. S. 227; *Keenan* v. *Perry* 24 Texas 253; *ex parte* Hennen 13 Peters 259; *Smythe* v. *Lalham*, 9 Kan. 672.

*Alexander Hughes* and *John F. Philbrick*, for respondent.

Successors to the incumbents must be appointed by the governor by and with the advice of the senate and in no other way. And appointments to fill vacancies must be made in the same way, except only when the legislature is not in session, the governor alone may make temporary appointments. *Peo.* v. *Howe*, 25 Ohio St. 588. *State* v. *Lusk*, 18 Mo. 341; *Peo.* v. *Osborne*, 4 Pac. Rep. 1079; *State* v. *Bearshide*, 32 La. Ann. 934; *Watkins* v. *Watkins*, 2 Md. 354; *Taylor* v. *Hibden*, 24 Md. 202; *Tapper* v. *Gray*, 9 Paige Ch. 516; *Com.* v. *Hawley*, 9 Pa. St. 513; *Territory* v. *Hauxhurst*, 14 N. W. Rep. 432; *State* v. *Wilson*, 72 N. C. 155; *Peo.* v. *Tyrrell*, 25 Pac. Rep. 684; *Peo.* v. *Bissell*, 49 Cal. 407; *State* v. *McMullen*, 46 Ind. 407; *McBlair* v. *Bond*, 41 Md. 155; *Peo.* v. *Hammond*, 66 Cal. 657; *Hubbard* v. *Crawford*, 19 Kan. 570; *State* v. *Brewer*, 44 Ohio St. 593. *Gossman* v. *State*, 106 Ind. 205; *State* v. *Harrison*, 113 Ind 437. A vacancy in office is never created by the appointment of a successor to the incumbent except in those cases where there is no tenure of office and the incumbent holds at the pleasure of the appointing power. *State* v. *Lusk*, 18 Mo. 341; *Peo.* v. *Carrigue*, 2 Hill 103; *State* v. *Jones*, 3 Oregon 536; *McBlair* v. *Bond*, 41 Md. 152; *Field* v. *Peo.*, 2 Scam. (Ill.) 79; *State* v. *Harrison*, 113 Ind. 434; *State* v. *Leary*, 64 Mo. 89.

WALLIN, J. This is a civil action, brought by the attorney general of the state, under Ch. 26 of the Code of Civil Procedure, to try the title to the office of warden of the state penitentiary at Bismarck, as between said plaintiff Daniel Williams and Nelson F. Boucher, the defendant. After a trial the District Court

adjudged that the plaintiff Williams had no right or title to said office, and that the defendant, Boucher was the duly elected and qualified warden, and entitled to hold said office and exercise its powers. From such judgment, plaintiffs appeal to this court. The facts which are embodied in the complaint and answer, are not controverted. Both claimants of the office in dispute base their respective claims to the office upon an alleged appointment thereto made by certain distinct groups of individuals, each group claiming to be and to constitute the board of trustees of the penitentiary at Bismarck, and therefore it will be necessary in disposing of this case to inquire into and determine which of the two groups of individuals that have assumed to act as the board of trustees of the penitentiary is entitled in law to exercise the power of such board, and to appoint the warden. The law creating the office of trustees of state institutions, including the Bismarck penitentiary, and regulating their appointment and terms of office, is found in § 1, Ch. 93 Laws 1889. At a session of the state legislature which convened in the year 1891, the governor of the state, acting under said statute, duly nominated, and, with the advice and consent of the senate, appointed, five trustees for the penitentiary,—three for a term of four years, and two for a term of two years. The title of the three who were appointed for the term of four years is not questioned; but the title of the two trustees who were appointed for the term of two years, viz: one Frank Donnelly and one Arthur Van Horn, is now denied and disputed by the plaintiffs. All of said trustees, appointed in 1891 as aforesaid, soon after their appointment, qualified and entered upon the discharge of their duties, and have ever since being acting in the discharge of their duties as such trustees. At the regular session of the legislative assembly, which convened at Bismarck in 1893, the governor of the state, at the proper time, nominated and sent to the senate for confirmation the names of W. O. Ward and Joseph B. Taylor as trustees of the penitentiary at Bismarck, and as the successors in office of said Donnelly and Van Horn, who had been appointed in 1891 for a

term of two years, as before stated. The nomination of said Ward and Taylor was not confirmed by the senate, but, on the contrary, their nomination was rejected, and the senate of 1893 adjourned without confirming any successors of the trustees appointed in 1891. Soon after the adjournment of the legislative assembly for the year 1893, the governor of the state, acting upon the assumption that a vacancy had occurred and was existing in the offices for which said Donnelly and Van Horn had been appointed in 1891 for a term of two years, appointed and commissioned said Ward and Taylor as trustees of the Bismarck penitentiary, and as the successors in office of said Donnelly and Van Horn. After such appointment by the governor, said Ward and Taylor undertook to qualify for their said offices, and took the oath of office, and executed an official bond, which official bond was approved, filed, and recorded with the secretary of state. Thereafter said Ward and Taylor, acting together with one Charles E. Stowers, (who was one of the duly appointed trustees of the penitentiary, and whose title to such office is not challenged,) met together, and assumed to be and constitute the penitentiary board, convened at the City of Bismarck, at the time and place appointed by law for the appointment of a warden for the penitentiary, and then and there did name and undertook to appoint the plaintiff Daniel Williams to be the warden of said penitentiary for a term of two years. All of the other trustees of said penitentiary refused to act and did not act or meet with said Stowers, Ward and Taylor at the time of their said meeting, or at any time. Said plaintiff Williams accepted such appointment, and his official bond was approved by Stowers, Ward, and Taylor, the other trustees refusing to act with them in the premises. After such appointment, the plaintiff Williams, in March, 1893, went to the penitentiary building, and made demand to be admitted thereto, and to have turned over to him the charge of said penitentiary as warden; but the defendant, Boucher, claiming to be the lawful warden of the penitentiary, refused to comply with such demand, and did not permit said Williams to enter the

building, and refused to turn over the penitentiary to Williams, and has never done so. The defendant Boucher, is in charge of the penitentiary as warden, and prior to such demand upon him by the said Williams, and after the attempted appointment of Williams, said Boucher had qualified as such warden, and claimed to be lawfully entitled to the office under and by virtue of an appointment thereto made by all of the trustees who had been appointed in 1891, as aforesaid, except said Stowers, who did not act, but refused to act, with the others who appointed the said Boucher as warden, as above stated. It appears from what has been said that the legality or illegality of the appointment of the said plaintiff Daniel Williams to the office of warden must turn upon the validity of the appointment of Ward and Taylor, who acted with Stowers in making his appointment. If Ward and Taylor were not trustees, and did not become such by virtue of the governor's appointment, then the appointment of Williams to the office of warden is and must be held to be a mere nullity.

The facts in the record call for a construction of the statute above cited. A portion of § 1 of the act is all that need be recited for the purposes of this decision. It reads: "And the governor shall nominate, and by and with the advice and consent of the council, shall appoint, at this session of the legislative assembly, five trustees for each of said institutions, two of whom shall hold their office for the period of two years, and three for the period of four years, and until their successors are appointed and qualified, except to fill vacancies, which appointments shall be made by the governor and shall extend only to the end of the next session of the legislative assembly." This statute contemplates and in terms provides that the trustees of state institutions, including the penitentiary, shall be chosen by the concurrent action of the governor and state senate, the governor to nominate, and, with the advice and consent of the senate, appoint, the trustees; and the statute further provides that upon the occurrence of a vacancy in the office of a trustee, and only in that event, the governor of the state shall, without the concurrence of the senate,

appoint a trustee to fill such vacancy, such appointee to hold office until the end of the next ensuing session of the legislative assembly, and no longer. But, before we proceed to discuss the question of the existence of a vacancy in the offices of Donnelly and Van Horn, we will briefly consider a broad and sweeping proposition advanced by the learned attorney general, who argues —and it is his principal contention—that neither the senate nor the legislative assembly, under the state constitution, has or can acquire the power to confirm any appointments to office made by the governor unless the office is strictly legislative or judicial in its nature. The claim is made that the right to appoint to office and to fill vacancies; except to legislative and judicial offices, is an implied executive function, and that the governor, as the sole repositary of executive power under the state constitution, possesses the inherent right to name the officers, and to fill all vacancies therein, and that such right exists by implication of law, and independently of express constitutional or statutory authority. The further claim is made that, inasmuch as the state constitution has not expressly declared that the power to appoint to office shall be shared by the governor with the senate or legislature, the whole power inheres in the executive alone. From these premises the attorney general draws the conclusion that, inasmuch as the limited term of two years had run before Ward and Taylor were appointed, the power existed in the governor, and that it was his duty, to appoint successors, and to do so without consulting the senate or allowing the senate to act upon his appointments. These views of course, imply necessarily that all parts of the statute creating the office of trustees of our state institutions which purport to confer upon the senate the right to confirm appointments made by the governor to such offices are unconstitutional and void. We have stated the proposition of the attorney general thus fully because it has been strenuously contended for and urged upon our attention with great force and earnestness; but, after careful consideration, we are unanimously of the opinion that the exigency of this case does not demand a

decision by this court of the abstract question which is involved in the proposition for which the attorney general contends. We will therefore simply say that the impressions of this court are decidedly against the views of the attorney general. We do not think that all power to appoint to office resides with the governor of a state as an implied executive function in cases where the constitution is silent upon the question. This view is in harmony with the spirit of our institutions, and has the support of a decided preponderance of authority. We cite only a few of the cases which are accessible: *Biggs* v. *McBride*, (Or.) 21 Pac. Rep. 878; *People* v. *Freeman*, (Cal.) 22 Pac. Rep. 173; *People* v. *Hurlbut*, 24 Mich. 44; *State* v. *Irwin*, 5 Nev. 111; *State* v. *Rosenstock*, 11 Nev. 128; *Mayor, etc., of Baltimore* v. *State*, 15 Md. 376; *State* v. *Lusk*, 18 Mo. 333-340; Cooley, Const. Lim. (5th Ed.) 136. Under the common law of England, the sovereign power belonged to the king, and the power to appoint to office was unquestionably a sovereign perogative. In this country, and under our form of government, the sovereignty has been transferred, and is in the hands of the people. It is conceded in this case, as it must be in all cases arising under our political institutions, that the sovereign authority,—the people,—in creating a state government, can lodge the authority to appoint its officers in any branch of that government, or bestow it at pleasure upon any official upon whom they may elect to bestow the same. In granting such power it may be conferred in full measure, and without limitation, or it may be conferred only to a limited extent. *Field* v. *People*, 2 Scam. 111. The people of this state have exercised this authority, and, in terms easily understood, have indicated in their constitution when and to what extent the governor shall exercise the power to appoint to office. Section 78 of the state constitution reads: "When any office shall for any cause become vacant, and no mode is provided by the constitution or law for filling such vacancy, the governor shall have power to fill such vacancy by appointment." This language is clear and explicit. It confers no right to fill any office which has not previously become vacant. The power to

fill a vacancy is granted, but that power is conferred subject to a double limitation upon its exercise. The governor can only fill a vacancy in cases where neither the constitution nor the law has made provision to fill the same. As the governor can fill a vacancy, and can do no more than that, it will not, as we have already said, become necessary in this case to determine whether § 78 is to be construed as a limitation upon an inherent power in the executive, or whether it must be regarded as a grant of authority not before existing. The power to fill an existing vacancy is conferred by the constitution upon the governor, and in the case at bar the statute, also in express terms, authorizes the governor to fill all vacancies which occur in the offices of trustees of public institutions.

Just at this point it may naturally be asked, since the power of the governor to appoint to office extends only to cases of vacancies not otherwise provided for, and since there is no express grant of appointing power in the constitution to any other functionary or department of government, where does the power of appointment of officers and their successors in office rest? The power to appoint to office is an attribute of sovereignty. All attributes of sovereignty essential to the administration of government must be vested in the several departments of government by the people; otherwise, the government founded by the people would not constitute a full grant of governmental power. Such government would, to that extent, be defective, for the reason that the people themselves, in their collective capacity, exercise no governmental functions. Now, we have seen that the power to appoint to the offices in question is not vested by the constitution in the governor. Neither is any appointing power vested in judicial department, except to appoint certain court officials. Unless, therefore, this power resides in the legislature, it is lodged in no part of the government. As to this it will suffice to say that all governmental sovereign power is vested in the legislature, except such as is granted to the other departments of the government, or expressly withheld from the legislature by constitutional restrictions.

Was there a vacancy in the offices occupied by Donnelly and Van Horn when the governor appointed Ward and Taylor to fill a supposed vacancy in such offices? This is the decisive question in the case. In appointing said Ward and Taylor, the governor of the state undoubtedly assumed that there was a vacancy in the offices occupied by Donnelly and Van Horn, and that such vacancy resulted from the fact that their term of office of two years had expired, and the senate had adjourned without confirming their successors. Did such supposed vacancy exist? If there was no vacancy, it will be conceded that the governor was without authority to appoint Ward and Taylor. We are' quite clear that the supposed vacancy did not exist. When the appointments were made; Donnelly and Van Horn were incumbents holding over after the expiration of their definite term of two years, and until their successors should be lawfully appointed. It therefore appears that the offices which Ward and Taylor were appointed to fill were not empty when the appointment was made, but, on the contrary, such offices were occupied by incumbents whose title and right to hold such offices were based upon the express language of the statute, which declares that all trustees of state institutions shall continue in office until successors are elected and qualified. The statute in question not only fixes definite terms of office for the terms of two and four years, but also, with equal clearness, annexes to the definite terms another period or term of indefinite duration, which period has been aptly described as. a "defeasible term" of office. The statute explicitly declares that trustees shall, after their limited term has expired, continue in office for a further period, and "until their successors are appointed and qualified." The definite terms of Donnelly and Van Horn had expired, and the legislature of 1893 had adjourned without confirming their successors, before the governor made his appointments; but, as has been seen, the terms of all trustees of state institutions in this state are extended by the statute beyond their limited duration, and until successors are appointed and qualified. Donnelly and Van Horn were appointed by the governor,

by and with the advice and consent of the senate, and hence, under the statute, will continue to hold their office until their successors are appointed and qualified in manner and form as the statute directs. There is no doubt in our minds that the statute in question must be so construed as to mean that successors of trustees shall be appointed by the same power and authority which appointed their predecessors, *i. e.* by the governor of the state, by and with the advice and consent of the senate. The legislature having adjourned without day, and the senate failing to confirm successors to Donnelly and Van Horn, it follows as of course that their successors cannot be legally appointed until the legislature shall reassemble, unless a vacancy has occurred or shall occur in their offices. It is the policy of the statute, as well as its clearly expressed purpose, to require the action of both the governor and senate in filling the important offices of trustees of state institutions, and not to allow them to be selected by the independent action of the executive, except in those cases of vacancies, not frequently occurring, where an executive appointment can be made temporarily to fill an actual vacancy. It has been said that the law abhors a vacancy in an office, but, in our judgment, a vacancy in the office of a trustee of one of the public institutions of this state does not come about from the mere .expiration of the limited term, even when that event is coupled with the fact that the senate had adjourned without confirming successors of those whose terms had expired by limitation of time. It seems quite clear to us that the vacancy referred to in the statute, and which alone gives the executive the right to make a temporary appointment, relates only to such actual vacancies as may arise from death, resignation, and the like. The expiration of a definite term, and failure of the senate to confirm successors to those whose terms have expired, are certainly not among the causes enumerated in the Code which will create a vacancy in office. Pol. Code, § 2 Ch. 22; Comp. Laws, § 1385. A "vacancy in office," within the meaning of the law, can never exist when an incumbent of the office is lawfully there, and is in

the actual discharge of official duty. Similar statutes of other states, which are indentical in their meaning, and generally in their language, with that we are considering, have quite frequently been construed by the courts of last resort in other states, and the construction we have placed upon our statute is sustained by the unanimous current of authority. *State* v. *Howe*, 25 Ohio St. 588; *People* v. *Tilton*, 37 Cal. 614; *People* v. *Whitman*, 10 Cal. 39; *People* v. *Bissell*, 49 Cal. 407; *People* v. *Edwards*, (Cal.) 28 Pac. Rep. 831; *People* v, *Oulton*, 28 Cal. 44; *State* v. *McMullen*, 46 Ind. 307; *State* v. *Hadley*, 64 N. H. 473, 13 Atl. Rep. 643; *Gosman* v. *State*, 106 Ind. 203, 6 N. E. Rep. 349; *State* v. *Harrison*, 113 Ind. 434, 16 N. E. Rep. 384. See, also, authorities cited in 19 Am. & Eng. Enc. Law, pp. 432, 433; *People* v. *Tyrrell*, (Cal.) 25 Pac. Rep. 684; Mechem Pub. Off. § 128; *Com.* v. *Hanley*, 9 P. St. 513; *State* v. *Rareshide*, 32 La. Ann. 934. "A vacancy exists only where no one has any legal title to the office." *State* v. *Ralls County Court*, 45 Mo. 58. "So long as the defeasible right to hold over continues, and the incumbent exercises it, the same conditions which would create a vacancy during the prescribed term will be required to create one during the term which he is lawfully holding over." *Gosman* v. *State*, 106 Ind. 203, 6 N. E. Rep. 349. Our conclusion is that the plaintiff Daniel Williams was not appointed to the office of warden by the board of trustees of the state penitentiary, or by any lawful authority, and that said plaintiff has no right or title to said office. The judgment of the court below will be affirmed. All concur.

ON REHEARING.

(August 14th, 1893.)

BARTHOLOMEW, C. J. Elaborate and exhaustive petitions for rehearing have been filed in this case by the attorney general and C. U. Greely, Esq., of special counsel. In these petitions the view of the law taken by the executive in submitting to the senate the names of Ward and Taylor as members of the board of directors of the state penitentiary, and in the subsequent appointment of such persons after their rejection by the senate, and after

the adjournment of the legislative assembly, upon the theory that a vacancy existed by reason of the expiration of the terms of office of Donnelly and Van Horn, is abandoned, and it is admitted that, if there existed in the senate any power of confirmation, then no vacancies existed, and the attempted appointment of Ward and Taylor was a nullity. But it is urged that a ruling upon this question of appointing power to which we adverted, but upon which we expressly declined to rule in the original opinion, is necessary to the proper disposition of this case, and that the power of appointment to office is so necessarily and inherently an executive function that it passed to the governor by plenary grant of executive power, to be divested only by express words, and that § 78 of the constitution, quoted in the orginal opinion, is not necessarily a limitation upon that power, but is a grant of power to fill a vacancy occurring in an elected office, which the governor would not have in the absence of such section. An attempt to answer this position places this court at once in that delicate and embarrassing situation from which all courts may well be excused from shrinking. Individuals and individual interests become as ciphers when passing upon the conflicting claims to power put forth by two co-ordinate and independent departments of a sovereign state. The great difference due from us to the executive department, not more than the high esteem we entertain for the gentlemen who has honestly sought to exercise this power, makes it eminently proper that, in denying the petition for a rehearing, we should succinctly state our objections to those views that have been so learnedly pressed upon us.

Appellant takes the position that when the people of this state adopted their present constitution, § 71 of which declared that "the executive power shall be vested in a governor," thereupon there passed to and vested in the governor the exclusive, unrestricted, and uncontrollable power to fill all appointive offices, and that such power must remain in full force unless limited by express words in the constitution, the presence of which is broadly denied; and that, while it is a legislative function to direct

the manner of induction into office created by the legislature, yet that such function extends only to the right to declare such office elective or appointive; and that, when so declared appointive, the volition of the governor in filling such office can no more be influenced, limited, or thwarted by the legislative assembly that could the volition of an elector in filling an elective office; and, further, that, as the legislative assembly has no appointing power in itself, neither can it confer such power in whole or in part upon any person, persons, or body, except the governor. This last claim, while not made in words, is the logical and necessary result of the claim of exclusive appointing power in the executive. The fundamental necessity, under the genius of our government, for the separation of the three great governmental functions and their distribution to the executive, legislative, and judicial departments, has been so often demonstrated, and so much more forcibly than the writer could do it, that it becomes us to accept the necessity without recapitulating the reasons for its existence. We accept without question the proposition that when our constitution vested executive power in the governor, and legislative power in the legislative assembly, and judicial power in the judiciary, these grants were in their nature exclusive, and that neither department, as such, could rightfully exercise any of the functions necessarily belonging to another department. With this statement of the exclusive nature of the powers of the different departments, if appellants' contention that the power to appoint to office passed to the governor by the grant of executive power, and that there is nothing in the constitution in any manner limiting or controlling such grant, be correct, then the conclusion is obvious that so much of Ch. 93, Laws Dak. T. 1889, cited in the original opinion, as required the appointment of the members of the board of directors of the penitentiary to be made "by and with the advice and consent of the council," was repugnant to the constitution, and was by § 2 of the schedule to that instrument nullified by the adoption of the constitution. If, however, the exclusive

N. D. R.—26.

power to appoint to office was not vested in the governor by the grant of executive power, then this result would not follow.

Is the power to appoint to office necessarily an executive function? A solution of this one vital point must rule this case. It is first argued that it is not competent for the senate to share the appointing power with the governor, by reason of the absence of certain provisions in our constitution. It is provided in § 2, Art. 2 of the Federal Constitution, that the president of the United States shall have power, by and with the advice and consent of the senate, to appoint certain officers. Section 1857, Rev. St. U. S., which, as § 61 of the organic law of Dakota Territory, was in force when Ch. 93, Laws 1889, was enacted, gave the governor power to appoint certain officers by and with the advice and consent of the council. Our constitution contains no similar provision. It is urged that these provisions were adopted for the express purpose of conferring upon the senate a share in the appointing power which it does not possess in the absence of such provisions. No authority is cited to support the position, and we deem it radically wrong. The provision in the Federal Constitution was adopted for the purpose of conferring upon the president a power which he did not have. We think this is clear, for several reasons. The provision appears in the article granting and defining the powers of the executive, and not in the article defining legislative powers. It purports on its face to be a grant of power to the executive. The phrase "by and with the advice and consent of the senate" was not contained in the original draft of the section, but came in by way of amendment. See Journal of Convention, p. 225. The sole object of the original draft was to confer power upon the president. The object of the amendment was to put a limitation upon that power. See opinion of *Mitchell*, J. in *Hovey* v. *State*, 119 Ind. 401, 21 N. E. Rep. 21; also Mechem, Pub. Off. § 110. The section in the organic law to which we have referred is too long for insertion here, but the plain purpose of the language is a grant of qualified power to the executive. Any other construction is strained, and renders a large portion of the

section worse than meaningless. Constitutional provisions em-powering the governor to appoint officers by and with the advice and consent of the senate are found in many of the states, and always in the article defining the powers of the executive; yet such provision is wanting in the constitution of many of the western states, among which we may mention, in addition to our own state, Wisconsin, Michigan, Missouri, Kansas, and Iowa. While in each of these states the executive power is vested in the gov-ernor, yet their statute books are full of instances where offices have been created and made appointive by the governor "by and with the advice and consent of the senate." The constitutionality of these provisions has never been doubted in those states, so far as we know. We think it clear that the absence of that provision from our constitution has no effect whatever upon the power of the legislature to direct that appointments be confirmed by the senate.

Is the senate precluded from participating in the appointing power by reason of the exclusive executive nature of that func-tion? Counsel for appellants, in discussing this point, lose sight of one very important distinction. The legislative department, as such, has not sought to exercise or to participate in exercising the appointing power. It has simply designated certain existing officers, to-wit, the senators, who should thus participate. Much of the labor of counsel is lost in this case by their failure to make this distinction, as will appear when the cases are examined. Mr. Mechem, in his work on Public Officers, says, at § 104: "So it is said that appointments to office, whether made by judicial, legis-lative, or executive bodies, are in their nature intrinsically execu-tive acts." He cites the following cases, all of which are relied upon by counsel in this case: *Taylor* v. *Com.*, 3 J. J. Marsh. 401; *State* v. *Barbour*, 53 Conn. 76; Achley's case, 4 Abb. Pr. 35; *Mar-bury* v. *Madison*, 1 Cranch, 137; *Heinlen* v. *Sullivan*, 64 Cal. 378, 1 Pac. Rep. 158. It would be an unwarranted use of space to review these cases at length. We are convinced none of them intended to assert the doctrine for which appellants contend.

The case from Kentucky, which seems to be a leading case, and which asserts that the power to appoint to office is inherently executive, still upheld an appointment made by a court exercising judicial powers. The cases from Connecticut and Abbott's Practice were instances where appointments were made by city councils which were upheld, and which in no manner involved the power of the governor. The case from Cranch involved an appointment made by the president, "by and with the advice and consent of the senate." The commission had been signed by the president, and sealed by the secretary of state, and the action was brought to compel delivery. It is only by inference that the opinion states the appointment to office to be an executive function. The case from California is entirely foreign to the point. Much reliance is placed upon the case of *State* v. *Kennon*, 7 Ohio St. 547. The case is not applicable. It deals entirely with the lack of power in the legislature, and not with the exercise of power in the executive. The constitutional provison in that state declared: "But no appointing power shall be exercised by the general assembly except," etc. As said by *Swan*, J., in that case: "Appointing power by the general assembly is thus cut up by the roots, except only in the special cases in which it is expressly given by the constitution itself." Then the constitution contained "negative words to limit the legislative authority." Nevertheless, the general assembly enacted a law creating a board to do certain work and appoint certain officers, and named the members of the board in the act. This was held to be an exercise of the appointing power, and void. But the court declined to say, even under the prohibitive language of their constitution, that the legislative assembly might not create a board of appointers to office and direct the manner of their induction into office, but held that "directing by law the manner in which an appointment shall be made, and making an appointment, are the exercise of two different and distinct powers,—the one, prescribing how an act shall be done, being legislative; and the other, doing the act, being administrative." Judge Swan in his concurring

opinion clearly intimates that the legislative assembly might enlarge the scope of an existing office, and require the incumbent tc exercise additional functions, such as the appointing power. *State v. Hyde*, 121 Ind. 20, 22 N. E. Rep. 644, was another instance where the legislature created a state office, and named the incumbent, and empowered him to appoint certain other officers, and to fill vacancies. A provision of the Indiana constitution, after dividing governmental powers among the three departments, provided that "no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this constitution expressly provided." Another provision empowered the governor to fill vacancies in state offices. The court held—three judges against two—that the act of the legislature violated both of these constitutional provisons. A study of the majority opinion shows it to be grounded upon the fact that there was no express authority conferred upon the legislature by the constitution to fill such office. The court say: "Whatever may be said of the constitution of other states, it cannot be successfully maintained that, under the constitution of this state, the legislature possesses latent or undefined power." If there be any reasoning in that case that does not meet our approval, it is based upon a constitutional provision which we do not have. The case of *State v. Peelle*, 121 Ind. 495, 22 N. E. Rep. 654, is in its main features identical with *State v. Hyde*.

Our own researches fully confirm the statement of Chief Justice Elliott in his dissenting opinion in the case last named, where he says: "I have searched with all possible care, but I can find no decision which sustains the contention of the relator that the appointing power resides in the governor. I find no conflict, but entire unanimity; for, in every case that I have seen, it is affirmed that, unless expressly prohibited by constitutional provisions, there is a class of offices which the legislature may create and fill by appointment." Mechem on Public Officers (§ 108) says: "But the power to appoint officers, excepting perhaps, those who are to assist him in the discharge of his personal executive duties, is

not inherent in the chief executive, but must exist, if it exist at all, by virtue of the authority conferred upon him by the sovereign power." By this we understand the author to mean that the fact that executive power is lodged with the governor— the fact that he is constituted chief executive—does not give him appointing power.    In *Mayor, etc., of Baltimore* v. *State*, 15 Md. 376, cited in original opinion in this case, the court said: "We are not prepared to admit that the power of appointment to office is a function intrinsically executive, in the sense in which we understand the position to have been taken; namely, that it is inherent in, and necessarily belongs to, the executive department.    Under some forms of government it may be so regarded, but the reason does not apply to our system of checks and balance in the distribution of powers, where the people are the source and fountain of government, exerting their will after the manner and by instrumentalities specially provided in the constitution.    The case cited [3 J. J. Marsh. 401] affirms that it is intrinsically executive; but the judge explains that the nature of the power is executive, whether exercised by the governor or a court, as distinguished from those acts of the court that are merely judicial.    But it is nowhere intimated that another department than the executive cannot exercise the power."    The erudite Judge Cooley, in speaking of this same Kentucky case, so much relied upon, after stating that the case declared the appointing power to be inherently executive, says: "In a certain sense this is doubless so, but it would not follow that the legislature could exercise no appointing power, or could confer none on others than the chief executive of the state.    Where the constitution contains no negative words to limit the legislative authority in this regard, the legislature, in enacting a law, must decide for itself what are the suitable, convenient, or necessary agencies for its execution, and the authority of the executive must be limited to taking care that the law is executed by such agencies."    Cooley, Const. Lim. 136, note 2.    In *Biggs* v. *McBride*, 17 Or. 640, 21 Pac. Rep. 878, cited in original opinion the court say:   "It was not claimed at the argument that

there is any express provision of the constitution which author-
ized the governor in direct terms to make the appointment in
question, but that it is included in the grant in § 1. Art. 5, of the
constitution. That section declares: "The chief executive
power of the state shall be vested in the governor." Now, if it
could be shown that the power to appoint all officers which
are not expressly made elective by the people is a part of
'the chief executive power of the state,' the appellant's contention
would be sustained. But no authority whatever has been cited to
sustain this view, nor is it believed that any exists. On the con-
trary, the provisions of the fifth article of the constitution, which
relates to the executive department, all seem at variance with
this view. The framers of this instrument evidently designed that
no prerogative powers should be left lurking in any of its provi-
sions. No doubt, they remembered something of the history of
the conflicts with perogatives in that country from which we
inherited the common law. They therefore defined the powers of
the chief executive of the state so clearly and distinctly that there
ought to be no controversy concerning the method of filling the
same, or in some cases of changing the method of filling an exist-
ing office." It is proper here to state that the constitution of
Oregon contains the express prohibitive language quoted from
Indiana, and the section granting the governor the express power
of appointment is much broader that our § 78. In this case, also,
the appointment was made by the legislature. In *People* v. *Free-
man*, 80 Cal. 233, 22 Pac. Rep. 173, it is said: "The contention on
the part of the relator is that appointing to office is intrinsically,
essentially, and exclusively an executive function, and therefore
cannot be exercised by the legislature." The court then quotes
the constitutional provision dividing governmental functions,
which is practically the same as in Indiana, and adds: "If the
making of appointments to office is a function which, in the sense
of the constitution, appertains to the executive department of the
state government, there would seem to be no escape from the con-
clusion that the appointment of the respondent by the members of

the legislative department was invalid, unless by some specific provision of the constitution such appointment is expressly directed or permitted.    On the part of the respondent, it is contended that such specific provision is found in § 4 of Art. 20, which reads as follows: 'Section 4.    All officers or commissioners whose election or appointment is not provided for by this constitution, and all officers or commissioners whose offices or duties may hereafter be created by law, shall be elected by the people, or appointed as the legislature may direct.'    But we cannot construe this section as an express direction or permission to the legislature to exercise the power of appointment to office, if that is essentially an executive function.  It would upon such an assumption amount only to this: that, with respect to newly created offices, or offices not provided for in the constitution, the legislature may direct whether they shall be filled by popular election or by executive appointment; in other words, that the legislature may prescribe the rule of selection, but may not itself make the selection.  *State* v. *Kennon*, 7 Ohio St. 561.  Our decision, therefore, must depend upon the solution of the question whether appointment to office is essentially an executive function."    And, on a review of the authorities, the court holds that it is not an executive function.  The language in the Nevada cases cited is even stronger, but we will not take space to quote it.    Mechem on Public Officers (§ 110) reads as follows: "The power of appointment may be absolute or conditional.    Where it is absolute, the choice of the appointing power, if it falls upon an eligible person, is conclusive.    But frequently the power of appointment is conditional, and may be exercised, as in the case or the president of the United States, 'by and with the consent of the senate' or some other body only, and this requirement of assent or confirmation is found in all grades of municipal offices."  But the grant of executive power to the governor is never conditional.    The condition is always found in a subsequent provision granting express appointing power.    But, if the grant of executive power carries with it appointing power, then these well nigh

universal subsequent provisions expressly granting appointing power are meaningless and confusing surplusage. But we are not allowed to thus construe the organic law. "In written constitutions there are no meaningless words. In the declared will of the sovereign people, every word has an office and a purpose. Hence these subsequent provisions must be necessary, and, if necessary it is because power to appoint to office does not necessarily adhere in executive power." One further quotation will be excused by reason of the incomparable ability and fairness of the mind from which it issued. "The inferences which I think follow from these views are two: *First,* that the denomination of a department does not fix the limits of the powers conferred upon it, nor even their exact nature; and, second, (which, indeed, follows from the first,) that in our American governments the chief executive magistrate does not necessarily, and by force of his general character of supreme executive, possess the appointing power. He may have it or he may not, according to the particular provisions applicable to each case in the respective constitutions." Webster's Speech on the Presidential Protest.

A careful study of all authorities to which we have been cited and all that we are able to find has made it entirely clear to each member of this court that the power of appointment to office does not necessarily and in all cases inhere in the executive department, and that when, as in this state, the express provisions of the constitution vest in the governor a limited power of appointment, such grant is exclusive, and no other or greater appointing power can be exercised. It is different with the legislative department. It is conceded in the brief of counsel that, by the great weight of authority, constitutional provisions are in the nature of grants of power to the executive and judiciary, but are limitations upon the power of the legislature. This is no doubt true. All governmental power not by the constitution lodged elsewhere resides in the legislature. "Whenever a power is not distinctly either legislative, executive, or judicial, and is not by the constitution distinctly confided to a department of the government

designated, the mode of its exercise and the agency must necessarily be determined by law; in other words, must necessarily be under the control of the legislature." Cooley, Const. Law, 44. "The general rule is that the legislature may exercise any power not denied to it by the constitution of the state, or the exercise of which is not prohibited by the federal constitution." *Cattle Co. v. State*, 68 Tex. 545, 4 S. W. Rep. 865. Many of the authorities already cited bear upon this subject, and from them the conclusion is clear that, where the legislature has the power to establish by law state institutions,—as, for instance, a state penitentiary, —it also has the power, as incident to the power of establishment, to say by what means and agencies the law shall be carried into effect; and, even when all appointing power is expressly denied to the legislature, it still has power to annex additional duties to an existing office. *Walker* v. *City of Cincinnati*, 21 Ohio St. 14; *State* v. *Harmon*, 31 Ohio St. 250-258; *Bridges* v. *Shallcross*, 6 W. Va. 562. If this be not true, and if the exclusive power of appointment rests in the executive, then the relator must assuredly fail in this case, because the law which established the penitentiary (Ch. 30, Sp. Laws Dak. T. 1883) declared the warden thereof to be a public officer, and directed that his appointment should be made by the board of directors. Relator. is in this court claiming title to an office by virtue of an appointment by a board created and vested with appointing power by the legislative assembly, but urges in support of his claim that the appointing power is vested exclusively in the executive, and the legislative assembly can in no manner control the same.

If in any case a court should be controlled by contemporaneous construction, we are certainly bound in this case. That the constitutional convention that framed that state constitution fully understood that the senate might be empowered to act with the executive in making appointments to office is perfectly clear from § 39 of the constitution, which provides "that no member of the legislative assembly shall receive any civil appointment from the governor or governor and senate during the term for which

he was elected." Every governor of the state, since our admission into the Union, has also acted upon the same theory by submitting to the senate the names of nominees for appointing offices, and every senate has acted upon such nominees by confirming or rejecting the same. During the three sessions of the legislature that have been held since statehood, and since the adoption of the construction, not less than 23 separate laws have been passed creating appointive offices where the governor has been required to share the appointment with some other person or persons or body, usually the senate. All of these acts, seven of which were passed by the last legislature, and signed by the present executive, are unconstitutional and void, on the theory that the exclusive appointing power rests in the executive.

Thus much we have deemed it proper to say in explanation of the position taken in the original opinion. It is apparant from what we have said that our original views are in no manner changed. We are required in this case to choose between officers appointed by the governor and senate and officers appointed by the governor alone. In declaring the former to be the legal officers, we have no fear of in any manner violating the declared will of the sovereign people of this state, as expressed in their constitution. The petition for rehearing is denied. All concur.