A. F. McLANE, Respondent, v. A. P. SCOFIELD, Sheriff of Ward County, North Dakota, Appellant.

(191 N. W. 842.)

**Counties — taxpayer's suit will not lie against sheriff to restrain the employment of special deputies; complaint to enjoin sheriff from appointing and continuing deputies and other officers from paying funds to such deputies held insufficient for such relief as against the other officers.**

In an action by a resident and taxpayer to enjoin the sheriff from appointing and continuing in employment special deputies, and other county officials from paying county funds to such special deputies so appointed, it is *held:*

(a) That, as against the sheriff, plaintiff, upon the allegations of the complaint, is in the position of a private individual sustaining no threatened loss and having no right to maintain the action.

(b) That, as against the other defendants, the complaint does not allege, nor the record show, facts sufficient to warrant any injunctive relief.

Opinion filed December 28, 1922.

Counties, 15 C. J. § 354 p. 643 n. 7; § 358 p. 645 n. 35.

Action in District Court, Ward County, *Lowe,* J., to enjoin the sheriff and other county officials concerning the appointment and pay of special deputies.

Defendants have appealed from an order overruling a demurrer and an order refusing to vacate a temporary injunction.

Reversed and proceedings dismissed.

*Fish, Murphy & Nash,* for appellants.

*Funke, Campbell & Eide,* for respondent.

Statement.

BRONSON, J. This is a proceeding to enjoin the sheriff and other county officers from appointing or paying certain special deputies.

The complaint alleges that between July 1st and 25th, 1922, the G. N. Ry. Company had appointed and employed certain peace officers, so designated by it under the statute, in and about its property at Minot, North Dakota; that the sheriff, without any emergency existing therefor, appointed about twelve special deputies to serve as such until removed; that such deputies so appointed were then and are now in the employ of the railway company, receiving compensation from the company as peace officers; that such persons are in the employ of Ward county as special deputies and are demanding and receiving pay from Ward county as compensation for their services; that the county commissioners, county auditor, and county treasurer are about to expend and use the funds of Ward county in payment of the compensation of such special deputies and will do so unless restrained and enjoined by the court.

With the complaint there are two affidavits: One, by the plaintiff, to the effect that the sheriff had appointed some twelve special deputies who were in the employ of the railway company; that these special deputies were receiving $6 per day and meals; that the railroad company was paying one half thereof and furnishing the meals and that Ward county, pursuant to the understanding, would pay the remaining one half, or $3 per day. Another, by one Barnum, to the effect that on July 12th, 1922, he and two others were appointed by a deputy sheriff as special deputies to work for the G. N. Ry. Company and to watch its property; that the understanding was that they should receive $6 per day and meals, of which the county would pay one half and the railway company one half; that he was instructed to report to, and work under the direction of, a person in the employ of the railroad known as chief of railroad police; that a large number of special deputies were appointed and were working under the direction of such chief; that affiant worked under the direction of Lano for a day and a half and was paid for such time by the railroad company $4.50 and was furnished his meals.

Upon such complaint and affidavits, the trial court, on July 25th, 1922, issued a temporary order, restraining the defendants from appointing and qualifying such peace officers and special deputies and railroad police in the employ and pay of the railway company as peace officers and restraining them from continuing the appointment and

employment of such special deputies. On July 27th, 1922, the defendants interposed a demurrer to the effect that the complaint does not state a cause of action and that the plaintiff has no interest other than that which could be claimed by the public at large; also, defendants moved to vacate the temporary restraining order upon the grounds that the court was without jurisdiction to issue the same and that it is an interference with the sheriff in the performance of his executive duty; and, further, that it does not appear that plaintiff has any interest other than that of the public at large. On August 5th, 1922, the trial court overruled the demurrer, with leave to the defendants to answer within thirty days, and quashed the motion. The court also continued the injunctional order. On September 29th, 1922, the defendants appealed from the order overruling the demurrer, and from the order continuing the restraining order and refusing to vacate the same.

## Opinion

The basis of plaintiff's right to maintain this action is that he is a resident and a taxpayer of the county. As such he seeks the exercise of the judicial sovereign power to restrain an executive officer from making or continuing a discretionary appointment, and, further, to enjoin other county officers from paying out county funds to special deputies appointed by the sheriff.

So far as the action concerns the sheriff, the plaintiff seeks to enjoin the commission of an alleged public wrong, namely the illegal exercise of a discretionary power of the sheriff. As against the sheriff he seeks relief like unto prohibition; a judicial decree to prohibit the sheriff from making appointments, founded upon the idea that the sheriff is without legal authority so to do. Whether the acts of the sheriff may occasion any loss to plaintiff as a taxpayer is a question both remote and contingent. It is a question that depends upon many considerations. Considerations that involve perchance, the probability of presentation of any bills to the county; the probability of their allowance or disallowance and the legal liability of the county in case of allowance. The complaint alleges no necessity for plaintiff's championing the interests of the state in order to prevent the sheriff from exercising his discretionary power to appoint special deputies. In this regard

his position is that of a private individual who has sustained no injury and has shown no special or peculiar interest in the subject-matter alleged.

So far as the other defendants are concerned, the complaint neither alleges nor shows that a single bill of any kind has been presented to the county or its officers for audit or payment, by reason of the sheriff's acts. There is no specific showing or specific allegation that such defendants are about to act illegally or contrary to law to the injury of the plaintiff as a taxpayer. Even the affidavit made and submitted by the person who was employed as a special deputy does not show that he made any demand, presented any bill, or received any pay, from the county. The complaint is insufficient to warrant relief to the plaintiff under general principles which apply when a taxpayer is seeking injunctional relief.

Even though it be conceded, for purposes of argument, that the county should not pay such special deputies a per diem and mileage (§ 3524 Comp. Laws 1913) when such special appointees of the sheriff are also peace officers already appointed by a corporation who is obliged under the law, and who has agreed to pay their fees and expenses (§§ 4810, 4811, 10,586, 10,590, Comp. Laws 1913), it does not follow that this affords any ground for injunctional relief to a mere taxpayer in a private suit upon general allegations of probabilities. It will not be presumed in advance that the disbursing officials of the county will disburse county funds illegally. The proceeding should be, and is, dismissed.

BIRDZELL, Ch. J., and ROBINSON and CHRISTIANSON, JJ., concur.

GRACE, J. (dissenting). This is an appeal from an order sustaining a demurrer to the complaint. The proceeding is one to enjoin the defendant as sheriff of Ward county, and R. W. Kennard, auditor, and Alfred Mostad, as treasurer of Ward county.

The complaint in substance alleges, that between July 1st and 25th, 1922, the Great Northern Railway Company appointed and employed certain peace officers in and about its property at Minot, North Dakota, who were designated by it, under the provisions of a statute, hereinafter referred to. The complaint further, in substance, shows that

twelve of these appointees were by the defendant sheriff, appointed as special deputies until removed; that such persons are receiving compensation from the railway company as peace officers and are demanding and receiving from Ward county, compensation for their services as special deputies; that the county commissioners, county auditor, and county treasurer are about to expend and use the funds of Ward county in payment of the compensation of such special deputies and will do so unless enjoined by the court. The appointment by the sheriff of the deputies must presumably have been under the authority of § 3524, Comp. Laws, 1913. The affidavits accompanying the complaint show that these persons were receiving $6 per day and meals, the railway company paying one half thereof and furnishing meals and Ward county to pay the remaining one half or $3 per day.

The complaint, after alleging the official positions of the defendants and the corporate existence of the Great Northern Railway Co., further states:

· (4) "That heretofore and at sundry times between the 1st day of July 1922 and the 25th day of July 1922, the said railway having then and theretofore employed sundry and sufficient police officers, the defendant, A. P. Scofield, as sheriff of Ward county, without right or cause therefor, no emergency arising or existing therefor, then and there and at all times falsely and fraudulently claiming and pretending that there was a case of an emergency has appointed and qualified and caused to be appointed and qualified sundry special deputies under and pursuant to the authority to him granted by the statutes of this state in case of emergency, and which said special deputies, not less than twelve in number, are and will continue to act and serve as such special deputies until removed by the said defendant, A. P. Scofield, sheriff, or otherwise, and are and will continue in the employment of the county of Ward in the state of North Dakota as such special deputies, demanding and receiving from said county of Ward, compensation for their services as provided by law; and which said compensation the defendants herein threaten to and are about to pay the said special deputies; and will pay or cause to be paid to them, if not enjoined and restrained by this court and that the said defendant sheriff threatens to and is about to continue the appointment and employment of said special deputies as such. · ·

(5) "That prior and at the time of such appointment of said persons

by the said sheriff as special deputies, as aforesaid, and during the time of their employment and service as such special deputies, the said persons so appointed and qualified by the said defendant sheriff were and they still continue so to be, in the employ of the said Great Northern Railway Company, and are receiving compensation and pay from said railway company as peace officers of all of which said defendant sheriff at all times had full notice and knowledge and which he, the said sheriff, well knows.

(6) "That no case of emergency has arisen or exists warranting the appointment of such special deputies by the defendant sheriff as aforesaid, and as such sheriff well knows; that plaintiff is informed and verily believes and therefore states the fact to be many of said special deputies so appointed by said sheriff are not residents of the state of North Dakota and are not residents of the county of Ward in said state of North Dakota.

(7) "That the defendants, the said county commissioners and said auditor and treasurer as such officers, in their respective capacities threaten to and are about to expend and use the funds and money of said Ward county in payment of the compensation of said special deputies aforesaid; and to issue and to cause to be issued and delivered warrants drawn upon the funds of said Ward county in payment therefor and to pay the same out of the said funds of said county; and that the said defendants will so do if not restrained and enjoined by this court, to the manifest injury and damage of this plaintiff and other residents and taxpayers of said Ward county, North Dakota.

(8) "That under the laws of the state of North Dakota the railroad company is required to employ such peace officers at its own expense and to pay the said peace officers and that the appointment and employment of such peace officers as special deputies by the said sheriff and the payment of said peace officers and their compensation in part or in full out of the funds and moneys raised by Ward county from the taxpayers of said county by means of the process of taxation is and constitutes an unwarranted, unauthorized, and fraudulent diversion and expenditure of the tax moneys of said county, and an unlawful and excessive burden upon the said taxpayers of said county and a fraud upon the rights of said taxpayers and upon the public, and that the appointment of such special deputies by the said sheriff without necessity

therefor and when no case of emergency exists requiring such appointment is and will be a fraud upon the rights of the said taxpayers and the public, and an unwarranted and unlawful diversion and use of the tax moneys of the said county; and that this plaintiff is without any speedy and adequate remedy at law in the premises.

"Wherefore, plaintiff prays judgment as follows: That the defendants herein be enjoined and restrained by this court from appointing and qualifying such peace officers; and railway police in the employ and pay of said Great Northern Railway Company as peace officers appointed by said railway company under the statute of this state or others unnecessarily and be enjoined and restrained from continuing the appointment and employ of any of such special deputies and be enjoined and restrained from allowing or paying the said special deputies money and funds of the county of Ward, in the State of North Dakota as compensation for their services, or otherwise, and from in any manner approving or allowing the accounts and claims of such special deputies, issuing warrants therefor drawn upon the moneys and funds of Ward county, North Dakota and paying the warrants, and for such other and further relief as to the court may seem just and equitable in the premises."

Section 173 of our state Constitution provides for the election of a sheriff in each county of the state. It also provides that the legislative assembly shall prescribe the duties of all county officers, and the sheriff is one of such. Agreeably to this section, the legislative assembly by § 3524, prescribes the duties of the sheriff with reference to the appointment and qualification of special deputies. This section provides, so far as material here:

"In case of any emergency the sheriff shall have the authority to appoint and qualify special deputies in such numbers as in his judgment the conditions may require, and each of such special deputies shall receive as compensation for his services the sum of $3 per day and the same mileage as allowed to regular deputies, to be paid by the county. The sheriff shall have the sole power of appointing and removing them at pleasure."

It will be noticed from this language that before the sheriff can appoint special deputies, an emergency must exist. It is alleged in the complaint that no emergency existed, warranting the appointment

of special deputies and in substance it is further alleged that the sheriff well knew this. It is a conceded principle of law, of pleading, that the demurrer admits all of the allegations of the pleading to which it is interposed which are well pleaded. In this case, therefore, the demurrer admits all of the allegations of the complaint. The defendant sheriff, admits thereby, that no emergency existed. In view of this admission, he was not authorized to appoint any deputies under the provisions of § 3524. There is no other authority of which we are cognizant, which authorizes him to appoint special deputies. The law provides by this section for the appointment of special deputies upon a particular ground. There are, of course, other provisions of law providing for the appointment of regular or general deputies, but a discussion in respect to them, is unnecessary here. If we are correct in what we have said, the sheriff had no authority, there being no emergency, to appoint special deputies. If he had no authority to appoint them, they were not and are not entitled to be paid by Ward county and the plaintiff or any other taxpayer of the county could bring an action to restrain such payment, and such is the nature of this action.

There is another feature of this case, which may be briefly discussed. It relates to the alleged right of railway companies, doing business in this state, to appoint and, at their own expense, to employ persons as peace officers on their property. In this respect § 10.586, so far as necessary to consider here, provides:

"Every railway or railroad company doing business within this state is hereby authorized to appoint and at its own expense to employ, such persons as peace officers at its stations or other places along the line of its road within this state, as may be by it deemed necessary, for the protection of its property or the preservation of order on its premises, or in or about its care, depots, grounds, yards, buildings, or other structures, or any of the same under its control or in its possession."

By this section the legislature undertook to delegate part of the sovereign authority of the state of North Dakota to the railway companies, doing business in this state, in that it authorized such railway companies to appoint and employ peace officers in the manner set forth in the section. In other words, it attempts to confer a power upon them, the power of appointing peace officers, which means, in such cases, the appointment of an officer, who, when on their property, has powers as

broad as those possessed by a sheriff. The power of appointing to office has been held to be an executive function. State ex rel. Standish v. Boucher, 3 N. D. 389, 21 L.R.A. 539, 56 N. W. 142. It seems quite clear that the legislature has thus attempted to delegate to the railroad companies, of this state, a part of the sovereign executive power of the state, and we think this was invalid.

Under this section, the railway companies could make not only a dozen but all of their employees, peace officers on their property. In other words, they could create a great army of such peace officers. The appellant has requested that judicial notice be taken that a strike was in progress on most of the railways of the United States, at the time of the commencement of this action and upon the Great Northern Railway. Let it be assumed that the employees of the Great Northern Railway were on a strike. A strike is not unlawful if it is peaceful. In other words, if there is an absence of violence or violent destruction of property, property rights or personal rights, we think it is well recognized in such case that the employees of a railroad or those of other industrial enterprises have a right en masse to strike in order to better their condition, increase their wages, decrease the dangers of their employment, in general to better the situation under which they labor. We know of no law of this state which prevents a peaceful strike, for these or other legitimate causes. Neither is there any national law of which we have knowledge which prevents a strike of the character we have mentioned. Whenever laws are enacted which prevent employees of railways or other large masses of employees, employed in other industries, from holding a peaceful strike, for the purpose of bettering their condition, and such laws become effective and are thoroughly enforced, the difference between the situation of such employee, then, and that of the enslavement of the negro in earlier days, will be a distinction without a material difference.

Then again, a large number of so-called peace officers, appointed by a railway company under the provisions of said law, may become the very source of violence. In many industries, when the employees call a general strike, most of their number observe the strike and refrain or refuse to do further work pending the settlement of it. In such case, the company which is operating the industry endeavors to supply the places of their striking employees with others. At such times they must

often accept the services of those who are unskilled in the employments vacated and at times they are not too choice as to the kinds of persons they thus employ. Many of them undoubtedly are persons of good name and reputation and law abiding, while others may be employed whose reputation for peace and good order is not of the very best. Then again, there are those who are known as the professional strike breaker and there are various persons of other elements of character who for various cause and reasons, drift in to fill the places of the strikers. In such case, if these are made peace officers so that they may become reservoirs of authority, and in demeanor, perhaps, overbearing or oppressive to peaceful strikers, instead of being a means of securing the public peace, they may become a source and means of exciting violence.

The sovereign power of the state of North Dakota is ample to protect the lives, personal rights, property and property rights, or any other right of any persons within the state, including railway corporations, against destruction or impairment by violence and it will do so whenever the occasion arises. Unlawful force or violence, whether it occurs in relation to a strike by the acts of either side, or elsewhere, is reprehensible. It deserves the severest condemnation of all right thinking people. The sovereign power of the state will not and ought not countenance the violent destruction of personal or property rights, by either employers or striking employees.

Again adverting to § 10,586, we think we are justified in saying of it, that it is special legislation of a pronounced and very dangerous type and, we think, it is contrary to the provisions of our constitution in that respect and is invalid. We think the court properly overruled the demurrer. Its order in that respect should be sustained. The case should be remanded and appellant given reasonable time to interpose an answer.