[File No. 6356.]

STATE OF NORTH DAKOTA EX REL. OLE H. OLSON, as State Highway Commissioner, Relator, v. WALTER WELFORD as Acting Governor of the State of North Dakota, and W. J. Flannigan, Respondents.

(260 N. W. 593.)

Opinion filed April 20, 1935.

*Charles L. Crum* and *C. Liebert Crum,* for relator.

524

*P. O. Sathre,* Attorney General, and *Chas. A. Verret,* Assistant Attorney General, for respondent.

*R. C. Morton,* amicus curiæ.

PER CURIAM. The respondent Welford is acting governor of the state of North Dakota. The relator, Ole H. Olson, was, on the 23rd day of January, 1935, appointed as highway commissioner pursuant to the provisions of chapter 125, Sess. Laws 1933. He duly qualified and entered upon the performance of the duties of the office and claims to be the lawful incumbent at this time. Chapter 125, among other things, provides:

"Section 1. The office of State Highway Commissioner is hereby created and established, which shall consist of one person, to be appointed by the Governor for a term of three years, and until his successor is appointed and qualified, and who shall be subject to removal by the Governor for neglect of duty or for nonfeasance or malfeasance in office. . . .

"Section 6. In addition to the foregoing powers and duties, the State Highway Commissioner shall be the chief executive and administrative officer of the offices and departments above enumerated. He shall have charge of the records of the State Highway Department. He shall cause minutes of his acts to be kept and accurate and complete books of account to be kept, and to supervise the signing of vouchers, orders for supplies, materials and any other expenditures. He shall have authority, and it shall be his duty to employ all engineers, assistants, clerks, agents, attorneys and other employees, as may be required for the proper transaction of the business of his office, or of the State Highway Department; fix their titles, determine their duties, the amount of their bonds in the State Bonding Fund, if any are required, their compensation, and discharge them in his discretion; sign and execute all documents and papers, contracts and agreements for highway

construction, and purchase of machinery, materials and supplies. . . .

"Section 7. Such State Highway Commissioner shall not pay, to exceed the maximum sums hereinafter stated, for the following classes of employees, to wit:

"For bookkeeper not to exceed .......... $1800.00 per annum
"For draftsman not to exceed ............ 2000.00 per annum
"For assistant engineers not to exceed .... 2400.00 per annum
"For engineers, other than the chief engineer
          or his first assistant not to exceed .... 3000.00 per annum
. . ."

On March 26, 1935, the respondent, Governor Welford, served the relator Olson with a written notice, wherein he advised the relator that complaint had been made that the relator was guilty of neglect of duty and of nonfeasance and malfeasance in office, in that the relator had failed to maintain the highways under his direction and supervision in a proper condition of repair and had failed to employ competent employees and subordinates; that he had permitted certain of his agents and employees in the highway department to be overpaid contrary to the provisions of the statute fixing the maximum compensation for such agents and employees; that he had used the agents and facilities of the highway department in obtaining information for purposes other than highway purposes; and that on account of these defaults his resignation was requested; that if he should not accede to such request a hearing would be set to take evidence in support of the charges thus made against him to the end that he might be removed, which hearing was set to be had on April 5, 1935.

The relator interposed an answer to the charges as contained in the notice wherein he alleged that the charges were vague and indefinite, and demanded a bill of particulars. He further interposed a qualified general denial, and with respect to the charges of failure to keep the roads in proper condition alleged that all had been done that could have been done under the circumstances, that if they were in bad condition this was owing to the failure of his predecessors to properly care for and maintain them, and that he had neither time, opportunity nor means wherewith to wholly remedy their objectionable condition. With respect to the charge of overpayment of salaries, he alleged that there had been no overpayment, that such payments as were made were in

accordance with the schedule that had been set up long prior to the time of his incumbency of the office. He further challenged the constitutionality of chapter 125, Sess. Laws 1933, under which these removal proceedings were had, on the ground that the subject of the act, in so far as it deals with the governor's power of removal, is not expressed in the title thereof and that accordingly the same is unconstitutional as being contrary to the provisions of § 61 of the Constitution.

The relator refused to resign. A hearing was had on the day set in the notice. Thereafter the governor made an order reciting that "It appearing satisfactorily . . . that legal causes have been shown and established at said hearing for the removal of said Ole H. Olson from the office of State Highway Commissioner . . ." and ordered that the relator be removed from office and declared the office vacant. At the same time the governor, in writing, appointed the respondent W. J. Flannigan to the office of highway commissioner.

Thereupon the respondent Flannigan proceeded to the office of highway commissioner and demanded of the relator that he surrender the office and the appurtenances thereof to Flannigan. This demand was refused. The governor thereupon ordered a peace officer designated by him, to proceed to the office of the highway commissioner and to demand the office and the possession thereof under threat of prosecution for resistance of an officer. This was done. Olson turned the keys over, protesting that he did so only to prevent a dispossession by force and because of the threat of prosecution. Flannigan toook possession. Olson consulted his attorney but persisted in an attempt to continue as highway commissioner. Flannigan also, purporting to function as commissioner, proceeded to discharge certain employees of the department. Thereupon the relator Olson applied to this court for an appropriate writ to procure a review of the removal proceedings and for a temporary restraining order restraining Flannigan during the pendency of such proceedings and until the propriety thereof could be determined from continuing in possession of the office and from exercising and performing the powers and duties thereof.

This court on the showing made thereupon issued a writ in the nature of certiorari directed to the governor requiring that the record of all proceedings had to be certified to this court for examination and review, and further issued its restraining order restraining Flannigan

from in any way interfering with the relator in the exercise and enjoyment of his duties and privileges as state highway commissioner and in the occupancy of his office, and enjoining Flannigan from acting as commissioner until the further order of the court.

Thereafter the respondents made special appearance and objected to the jurisdiction of the court, moved to vacate the restraining order on the grounds that it appeared on the record that a hearing had been had upon the charges made against the relator Olson; that after hearing the governor had made his order finding the charges sustained and removed Olson from office, and thereupon made his further order appointing Flannigan as highway commissioner; that the office had been assumed by Flannigan upon surrender by Olson; that Flannigan was in legal possession thereof, exercising and performing the powers and dutes thereof; that accordingly the temporary restraining order had been improvidently issued contrary to the provisions of § 7214, Comp. Laws 1913, providing that "an injunction cannot be granted to prevent the exercise of a public or private office in a lawful manner by the person in possession." This motion was denied. Thereafter a return of the proceedings had in the removal proceeding was made.

This court has heretofore had occasion to consider the character and effect of removal proceedings such as those involved in the instant case and to pass upon the question as to whether it has the power to review such proceedings and the character and extent of such review. See State ex rel. Wehe v. Frazier, 47 N. D. 314, 182 N. W. 545; Livingston v. Peterson, 59 N. D. 104, 228 N. W. 816; Martin v. Morris, 62 N. D. 381, 243 N. W. 747; State ex rel. Ness v. City Com'rs 63 N. D. 33, 245 N. W. 887, same case, 63 N. D. 85, 246 N. W. 243; See also Baker v. Lenhart, 50 N. D. 30, 195 N. W. 16. The case of State ex rel. Wehe v. Frazier, supra, was, in many respects, much like the case at bar. There Governor Frazier sought to remove Wehe from his office as a commissioner of the Workmen's Compensation Bureau. Wehe resisted. In the opinion in that case the rules applicable here were laid down by Judge Bronson, who said:

"Both the supreme and district courts possess original jurisdiction to issue writs of certiorari. Const. §§ 87, 103. Section 8445, Comp. Laws 1913, amended (Laws 1919, chap. 76) provides: 'A writ of

certiorari shall be granted by the supreme and district courts, when inferior courts, officers, boards, or tribunals have exceeded their jurisdiction and there is no appeal, nor, in the judgment of the court, any other plain, speedy, and adequate remedy, and also when in the judgment of the court it is deemed necessary to prevent miscarriage of justice.'

"The function of this writ under the statute is peculiar and sui generis. This court, in agreeing with an interpretation made in South Dakota upon a similar statute, has held that, gathering its meaning and intent from its language, the office of the writ which it authorizes is not confined to a review of judicial or quasi-judicial proceedings, but extends to every case where, in the language and upon the conditions of the statute, inferior courts, officers, boards, or tribunals have exceeded their jurisdiction. State ex rel. Johnson v. Clark, 21 N. D. 517, 528, 131 N. W. 715; State ex rel. Dollard v. Hughes County, 1 S. D. 292, 46 N. W. 1127, 10 L.R.A. 588; State ex rel. Poole v. Peake, 22 N. D. 457, 461, 135 N. W. 197, 40 L.R.A.(N.S.) 354; State ex rel. Poole v. Nuchols, 18 N. D. 233, 238, 119 N. W. 632, 20 L.R.A.(N.S.) 413.

"The contention that the statute (Comp. Laws 1913, § 8445) by construction, refers to inferior courts, inferior officers, inferior boards, or inferior tribunals, is without merit. No such construction may be placed upon the plain reading of the statute. The function of the writ has heretofore been applied to a general court martial although such court martial belongs to the executive department, is organized, and its judgments approved by the Governor. State ex rel. Poole v. Peake, supra; State ex rel. Poole v. Nuchols, supra. Chapter 162, Laws 1919, which grants to the Governor the right of removal for cause, does not provide for an appeal.

"The writ will lie only if the Governor has exceeded his jurisdiction. It follows that it will not lie to review the sufficiency or the insufficiency of the evidence or the merely erroneous orders of the Governor, if the Governor acted within his jurisdiction. State ex rel. Noggle v. Crawford, 24 N. D. 8, 11, 138 N. W. 2; Fuller v. Board of University & School Lands, 21 N. D. 212, 221, 129 N. W. 1033; Smalley v. Lasell, 26 S. D. 239, 128 N. W. 141. It is evident that certiorari, if applicable, is an appropriate remedy. See 11 C. J. 108, 112.

"(2) Legal Control over the Governor: The contention is made that the Governor is immune from judicial control or interference by reason of his position as chief executive officer, exercising an executive function in a removal proceeding. This might be conceded, for purposes of this case, if the Constitution or the legislature, in creating the power of removal, had prescribed an arbitrary or solely executive function or removal. See Wilcox v. People, 90 Ill. 186. Thus, it might be so contended, if the legislature had provided that the officer might be removed without cause dependent solely upon the exercise of executive discretion. The sovereign power of removal from office is not necessarily an executive function, unless so made by the Constitution and statutes of the state. This power, formerly at the common-law resident in the King, in our state rests with the people, and evinces its expression in the Constitution or statutory laws. It may be executive, judicial or legislative, dependent upon the manner in which the people in the specific instance have allotted or bestowed this power. 29 Cyc. 1406. Thus, the legislature may exercise the power directly by impeachment proceedings. N. D. Cont. §§ 194–196. Again the legislature, pursuant to constitutional provision, might grant this power of removal to the judicial department. Section 197, N. D. Const., provides that all officers not liable to impeachment shall be subject to removal for certain acts in such manner as may be provided by law. This court has held, in construing such constitutional provision, that there may be removal for other causes, too, or without cause, if the legislature so declares, provided they are officers whose offices are created by statute. State ex rel. Moore v. Archibald, 5 N. D. 359, 66 N. W. 234. The legislative prescription, in such event, would make the exercise of this power of removal judicial in its character. The exercise of the power has been termed to be of a judicial character. State ex rel. Shaw v. Frazier, 39 N. D. 430, 444, 167 N. W. 510; State ex rel. Kinsella v. Eberhart, 116 Minn. 313, 133 N. W. 857, 39 L.R.A.(N.S.) 788, 797, Ann. Cas. 1913B, 785; 29 Cyc. 1406; Atty. Gen. v. Jochim, 99 Mich. 358, 58 N. W. 611, 23 L.R.A. 699, 41 Am. St. Rep. 606, 619; Bailey, Habeas Corpus, § 173. Accordingly, the legislature has provided for proceedings for the removal of state officers not liable to impeachment, and other public officers, by direct judicial proceedings for that purpose. Comp. Laws 1913, §§ 10,467–10,482. Likewise, the legislature might

confer this power of removal upon the executive department, an officer, or board thereof, and make such power wholly an executive function. Thus, the Game and Fish Commission may appoint and remove at pleasure deputy game wardens. Comp. Laws 1913, § 10,269.

"The fact that the Constitution vests in the Governor the executive power, § 71, Const., does not grant to the Governor the power of removal, unless by legislative act such power of removal is made an executive power. This court has heretofore held in construction of constitutional powers, that the power of appointment to office (and this includes power of removal) is vested neither in the executive nor judicial department of the Government, excepting as the Constitution has expressly granted such power. That this power resides in the legislature. That all governmental sovereign power is vested in the legislature, except such as is granted to other departments of the government or expressly withheld from the legislature by constitutional restrictions. State ex rel. Standish v. Boucher, 3 N. D. 389, 396, 56 N. W. 142, 21 L.R.A. 539. In that case the broad contention was made that the right to appoint to office and to fill vacancies, except as to legislative and judicial offices, was an implied executive function, and that the Governor, in whom the executive power was vested by the Constitution, possessed the inherent right to appoint officers and fill vacancies as an executive function, independently of express constitutional or statutory authority. This contention was denied, a distinction being drawn between the powers of the President under the Federal Constitution and those of the Governor in this state, and it was held that the power of appointment to office does not necessarily and in all cases inhere in the executive department; and that when, as in this state, the express provisions of the Constitution vest in the Governor a limited power of appointment, such grant is exclusive, and no other or greater appointing power can be exercised. State ex rel. Standish v. Boucher, supra, 409 [3 N. D.]. See O'Laughlin v. Carlson, 30 N. D. 213, 221, 152 N. W. 675; State ex rel. Langer v. Crawford, 36 N. D. 385, 162 N. W. 710, Ann. Cas. 1917E, 955; State ex rel. Langer v. Scow, 38 N. D. 246, 164 N. W. 939; Baltimore v. State, 15 Md. 376, 74 Am. Dec. 572. Accordingly, it follows that if the legislature possesses the power of prescribing the method and manner of appointment to and removal from office, it may allot this power to either the executive department or the judicial department

or to both and may prescribe the method of its exercise, namely, partly executive, partly judicial, that is quasi-judicial in its nature. So, when the Governor exercises this power pursuant to the legislative grant, it may not be said that the limitation placed on the exercise of this power is an interference with an executive function, when such power was not thereto possessed as an executive function and when, further, it is not granted to him as a purely executive function. The legislature has provided that the Governor may remove certain officers, such as state's attorneys, clerks of the district court, etc., when guilty of certain acts after a hearing as prescribed, chap. 184, Laws 1919 (amended Comp. Laws 1913, § 685). This right of removal is made subject, however, to the right of appeal to the district court and to a trial de novo therein. Comp. Laws 1913, § 690. Surely, it may not be said that this legislative grant and limitation concerning the Governor's right of removal under such law and the right accorded of reconsideration by the judicial department is either the creation of, or an interference with, a purely executive function. Rather does it demonstrate a legislative will to grant to the Governor the power to act in a quasi-judicial manner and to avail himself, if he desires, of judicial rules of procedure applicable. State v. Borstad, 27 N. D. 533, 147 N. W. 380, Ann. Cas. 1916B, 1014; State ex rel. Shaw v. Frazier, 39 N. D. 430, 167 N. W. 510. In the latter case the constitutionality of the act was affirmed as against the contention that it delegated judicial powers to the Governor. Further it was stated 'While the power to remove from office is generally regarded as a power possessed by the courts, in the absence of an express or implied grant to another authority in the government, this power may be exercised by the legislature or may be delegated by the legislature to some other authority.'

"In the legislative act under consideration, the legislature has granted to the Governor the power of appointment and of removal, but it has expressly provided that the removal must be for cause. Laws 1919, § 4, chap. 162; Spec. Sess. Laws 1919, chap. 73. An express legislative limitation was placed upon this executive power of removal. This limitation prescribed the exercise of a legal discretion in addition to an executive discretion. This limitation, as has been stated, the legislature had the right to prescribe. A removal for cause means for a legal cause. State ex rel. Hart v. Duluth, 53 Minn. 238, 55 N. W. 118, 39

Am. St. Rep. 595; Townsend v. Sauk Centre, 71 Minn. 379, 74 N. W. 150; State v. Donovan, 89 Me. 451, 36 A. 985; Andrews v. Biddeford Police Bd. 94 Me. 76, 46 A. 804; State ex rel. Reid v. Walbridge, 119 Mo. 383, 24 S. W. 457, 41 Am. St. Rep. 663; Hayden v. Memphis, 100 Tenn. 582, 47 S. W. 182. When the legislature deemed it proper to prescribe a legal cause as the basic ground for the removal of the office involved, necessarily there then applied those fundamentals in Anglo-Saxon jurisprudence, essential and recognized in any free and democratic government, namely, the right of the accused to a hearing, to be confronted with his accusers, and to the right of defense. See People ex rel. Metevier v. Therrien, 80 Mich. 187, 195, 45 N. W. 78.

"In a mandamus action involving this removal proceeding at bar, this court has stated: 'The respondent relies upon the familiar principle that where offices are created with definite terms and the incumbents are removable for cause, sufficient legal cause must exist to warrant removal. Also that officials not removable at pleasure are entitled to a hearing for the purpose of ascertaining whether or not sufficient cause for removal exists, and that the hearing must be one at which they are given reasonable opportunity to be present, to know the nature of the charges against them, to cross-examine witnesses, and to adduce testimony to disprove the charges. Throop, Pub. Off. §§ 362, 365; Mechem, Pub. Off. § 454. We do not question any of these propositions, but we do not deem them determinative here.' State ex rel. Wehe v. North Dakota Workmen's Comp. Bureau, 46 N. D. 147, 180 N. W. 49, 50.

"This court, therefore, has already adopted, without dissent, the principle that a legal cause in such case must exist and must be established at a hearing. It is merely trite to state that a legal cause is a judicial cause. It follows, accordingly, that the Governor, in exercising his power in such removal proceeding, necessarily acts in a quasi-judicial manner. That his orders, quasi-judicial in character, are subject to judicial jurisdictional review and that such review does not serve to interfere with any purely executive prerogative. 11 C. J. 108, 120; State ex rel. Shaw v. Frazier, 39 N. D. 430, 167 N. W. 510, supra; State ex rel. Martin v. Burnquist, 141 Minn. 308, 170 N. W. 201, 609; State ex rel. Kinsella v. Eberhart, 116 Minn. 313, 133 N. W. 857, 39 L.R.A.(N.S.) 788, Ann. Cas. 1913B, 785; State ex rel. Hart v.

Duluth, 53 Minn. 238, 55 N. W. 118, 39 Am. St. Rep. 595; Re Mason, 147 Minn. 383, 181 N. W. 570; Ekern v. McGovern, 154 Wis. 157, 142 N. W. 595, 46 L.R.A.(N.S.) 796; People ex rel. Clay v. Stuart, 74 Mich. 411, 41 N. W. 1091, 16 Am. St. Rep. 644."

In addition to the many authorities touching the questions involved in the instant case as set out in the foregoing quotation, we call attention to the later North Dakota cases heretofore cited. See also People ex rel. Johnson v. Coffey, 237 Mich. 591, 213 N. W. 460, 52 A.L.R. 29, and note; State ex rel. Fletcher v. Naumann, 213 Iowa, 418, 239 N. W. 93, 81 A.L.R. 483; State ex rel. Hardie v. Coleman, 115 Fla. 119, 155 So. 129, 92 A.L.R. 988. Considering these authorities there is no question in our minds as to the power of this court to review the proceedings of which the relator in the instant case complains or as to the procedure which was followed.

We think it proper at this time to direct our attention briefly to a consideration of the motion to vacate the injunctional order. This motion first challenges our jurisdiction in this case. The answer to this challenge is set forth in that portion of the opinion in the Wehe Case heretofore quoted and is conclusive. So we will now deal with the challenge to the propriety of the restraining order. As is well said in the case of Ekern v. McGovern, 154 Wis. 157, 142 N. W. 595, 46 L.R.A.(N.S.) 796, "Though a governor jurisdictionally has competency to remove an incumbent from his office, this power of removal does not include or have incidental thereto power to forcibly install a successor." It seems to us if this be true, and every logical reason supports the proposition, that when, in the instant case, Olson refused on demand to turn the office over to Flannigan but under the compulsion of threats of physical force and of criminal prosecution for resistance of an officer surrendered the keys and gave ingress to the office to him, this did not put the latter in lawful possession thereof. The respondents' theory underlying the motion to vacate the injunctional order was, that since it appeared there had been a hearing, an order of removal thereafter and the appointment of Flannigan, this prima facie clothed Flannigan with title to the office; and that his subsequent possession, however obtained, secured him as against interference by a court of equity. But 'it appears such surrender as there was by Olson was by virtue of coercion; that he did not wholly give up the office and that what he did was

not voluntarily done; that he endeavored to continue in it and attempted to exercise the powers of commissioner. We may concede that the question of title to office is a legal question and that it will not be determined in an equitable proceeding. But, under the circumstances as disclosed here, where the title to a very important office is the subject of controversy, an office involving the expenditure of vast sums of money, the direction and supervision of a great system of highways and the employment of a host of engineers, road maintainers and employees generally, equity will intervene in the interest of orderly procedure and the general welfare to prevent disturbance in or usurpation of that office as against a de facto incumbent, that is, one performing the functions of the office under color of authority. See Ekern v. McGovern, supra. And this is wholly consistent with the provisions of § 8448, the statute prescribing the requisites of the writ of certiorari. Here the term of office for which Olson was appointed was three years. The term had not expired. If his tenure of the office had been terminated it was by virtue of the removal proceedings. The controversy is as to the propriety of these proceedings. Olson denies their propriety. He challenges the jurisdiction of the governor to remove him on the record as made. The presumption of jurisdiction and of regularity on which the respondent predicated his motion does not, when thus challenged, prevail. This is the holding in both the prevailing and dissenting opinions in State ex rel. Wehe v. North Dakota Comp. Bureau, 46 N. D. 147, 180 N. W. 49. See also Phelps v. McCollam, 10 N. D. 536, 88 N. W. 292. In any event, for the purposes of the motion, Flannigan was not in office performing the duties thereof in a legal manner and the statute on which the respondent relies has no application. Though ultimately he be found to be entitled to the office, he must assert and establish his claim thereto in an orderly manner pursuant to the means provided by law. The law affords him ample remedy. A proper end does not warrant an improper means. It is no more proper for him to vindicate his rights in such case by force or other coercion than it is for any other individual who claims rights or property denied him. The fact that the governor joins in this motion adds no force to it. "He is amendable to the law, the same as any other person. Under our system when a judicial question arises, it is within the competency of the court to deal with it, not stopping to consider, necessarily, who are

the parties. Whenever there is a violation of law perpetrated or threatened, it is competent for the court to apply a remedy." Ekern v. McGovern, supra.

Now as to the constitutional challenge interposed by the relator. Section 61 of the Constitution provides that no bill "shall embrace more than one subject which shall be expressed in its title. . . ." The relator challenges chapter 125 on the ground that in so far as it deals with the power of the governor to remove the commissioner it contravenes this section. The title of the act is: "An act creating the office of State Highway Commissioner, defining his powers and duties, and fixing the compensation of said commissioner, and repealing chapter 153 of the laws for 1931." An examination of the act discloses that its subject is singular—the creation of the office of state highway commissioner. This subject is expressly stated in the title. It is true that the title further states that the act defines his powers and duties and fixes his compensation. But these things are incidental to the subject of the act. See State ex rel. Sandaker v. Olson, post, 561, 260 N. W. 586. In addition to expressly providing for the office of commissioner the act does define his powers and duties, does fix his compensation. It further provides for the appointment of the commissioner, for the duration of his term of office, and that the governor may remove him for stated reasons. All these matters are matters germane to the single purpose of the act. It could be argued as aptly that because the title does not expressly state that the act provides for the appointment of the highway commissioner on that account it is defective. So it seems clear that there is no fatal defect because there is no particular expression in the title with respect to the term of office or to the governor's power to remove. In considering such a constitutional provision (§ 61) Judge Cooley in his work on Constitutional Limitations, says: "It may therefore be assumed as settled that the purpose of these provisions was: *first,* to prevent *hodge-podge* or 'log-rolling' legislation; *second,* to prevent surprise or fraud upon the legislature by means of provisions in bills of which the title gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and, *third,* to fairly apprise the people, through such publication of legislative proceedings as is usually made of the subjects of legislation that are being considered, in order that they may have opportunity of being

heard thereon, by petition or otherwise, if they shall so desire." See Cooley, Const. Lim. 8th ed. pp. 291 et seq. He further says: "The generality of a title is therefore no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection." Such has been the effect of the holdings of this court touching the application of § 61. See State ex rel. Bismarck Tribune v. Steen, 60 N. D. 627, 236 N. W. 251; State ex rel. Kol v. North Dakota Children's Home Soc. 10 N. D. 493, 88 N. W. 273; Eaton v. Guaranty Co. of N. D. 11 N. D. 79, 88 N. W. 1029.

The relator urges there is no legal evidence whatever justifying removal.

As pointed out heretofore "The review upon this writ cannot be extended further than to determine whether the . . . officer has regularly pursued the authority of such . . . officer." Comp. Laws, § 8453.

The jurisdictional requisites in such proceeding for removal are, briefly: reasonable notice of time, place of hearing and of charges constituting a proper subject for investigation; reasonable opportunity to defend, characterized by full disclosure of adverse evidence according to the established principles of fair judicial investigation to determine the justice of the case; a decision upon proofs of record supporting it. Ekern v. McGovern, 154 Wis. 157, 142 N. W. 595, 46 L.R.A. (N.S.) 796, supra.

The governor has jurisdiction to determine whether the state highway commissioner should be removed for cause; but the causes for removal are limited to "neglect of duty, or for nonfeasance or malfeasance in office." Sess. Laws 1933, § 1, chap. 125.

The distinction between this case and that of State ex rel. Weeks v. Olson, ante 407, 259 N. W. 83, is apparent. Weeks was tax commissioner. The legislature had provided that the governor could remove the tax commissioner at any time and without cause. In such case there was no right of hearing. The governor could do as he saw fit. But with reference to the state highway commissioner the legislature explicitly limited the power of the governor to remove, requiring that removal should be only upon the causes set forth heretofore; therefore the principles discussed in the Weeks Case are not applicable here.

In this case the necessary legal requirements to initiate removal proceedings were observed. Notice of charges was served, a date set for hearing, opportunity to be heard afforded, and testimony introduced.

The complaint of relator herein that the charges as heretofore set forth were too indefinite, or did not afford him sufficient information so as to prepare a defense has some foundation; but the record indicates that while a demand for bill of particulars was denied, nevertheless, during the hearing the relator was made acquainted with the general nature of the charge and had opportunity to answer the same. In the statute creating the office of highway commissioner and providing for his removal the legislature did not see fit to prescribe rules of procedure, nor did the legislature make the rules of procedure set forth in § 685 to § 695 of the Compiled Laws applicable to this case. The matter therefore was left largely to the discretion of the governor and contemplated that the general rules regarding fair hearing as established by the common law would govern, that is, that notice of charges would be preferred, opportunity to be heard given, attention paid to the evidence produced and the matter determined on the legal evidence introduced.

During the progress of the hearing complaint was made that the relator was not given opportunity to present the testimony of certain witnesses in attendance. Testimony of eight witnesses was taken on behalf of the relator and it appears that thirteen more were prepared to testify. During the progress of the hearing, and the colloquy between those concerned, it appeared the testimony of the remaining witnesses was largely cumulative. The governor desired to conclude the hearing as rapidly as possible and when it was apparent the witness would not be heard the relator made an offer of proof, setting forth what these witnesses would testify to. Stipulation was entered into with the state to the effect that if these witnesses were called they would testify as stated in the offer of proof and therefore they were not heard.

Proceedings of the kind involved herein are not conducted with the same adherence to rules as are employed in the trial of cases in a court. The hearing is more informal and greater latitude is allowed. The test is whether the relator has opportunity afforded him to present competent testimony to refute or explain charges made. It is a common practice, with reference to cumulative testimony, to stipulate that

certain other witnesses would testify along the same lines. This was done in the proceeding and it cannot be said that the refusal to hear them audibly was a denial of a fair hearing.

In this case no findings of fact were made by the governor. An instrument denominated "findings and order of removal" was drawn and signed. In this document it is set forth that the relator was required to show cause "why he should not be removed from his office of state highway commissioner of the State of North Dakota for neglect of duty and for nonfeasance and malfeasance in office." After hearing the testimony the governor announced his conclusion and made his order of removal.

The question therefore is narrowed to whether there was any legal evidence presented on which the governor could act—the weight and sufficiency of said evidence being for the governor alone to determine.

The charges in general are three in number and we refer to them in the inverse order in which they are set out. No evidence whatever was introduced showing the relator guilty of malfeasance in office as charged. The malfeasance charged is that the relator requested employees of the state highway department to gather and furnish him information, and is based solely upon a letter which he sent to the division engineers and the maintenance superintendent asking them to gather information regarding "the live stock feed situation" in each district in order that the relator could "obtain a complete picture of the live stock feed situation throughout the whole state." The record shows without dispute that the state highway commissioner was gathering this information primarily for the benefit of the relief departments of the State and Federal Governments in order to assist in "live stock feed distribution to the end that the needs of our people may be met so far as it is possible to do so." Nevertheless it was within the scope of his duties as state highway commissioner also. In the discharge of his duties and in agreement with the Federal Government, the state highway department was required to employ horse power machinery. Owing to the lack of feed it was becoming impossible to employ the horses as required. The trivial expense incurred—$4.55—was paid by the Federal Government. There being no malfeasance in office shown it is clear the decision of the governor to remove the relator could not

have been based upon its charge. There was no evidence whatever introduced to substantiate it.

The second charge is that the relator had allowed and·permitted "certain employees . . . a monthly compensation for their services exceeding that allowed by statute," naming the employees. It becomes necessary for us to determine whether there was any evidence introduced substantiating this charge, remembering as we pointed out before that if there is legal evidence the question of its weight and sufficiency is for the governor alone. There was no evidence whatever introduced to support this charge. It is not necessary to set forth the provisions of chapter 125 of the Session Laws of 1933, being the statute said to have been violated. Differences of opinion on this charge preferred by the governor against the relator are based on matters of law alone—the classifications of employees, etc. A mere erroneous decision in a matter of law is no ground for removal, and if the decision on this matter of law was erroneous—a matter which we do not determine—the record herein shows it was based largely upon advice given by a member of the department of the Attorney General of this state—the department now engaged in the prosecution of this charge. No legal evidence whatever was introduced to substantiate this charge and therefore the governor had nothing before him on which he could base a removal on this point.

The remaining charge deals with neglect of duty as state highway commissioner. It is specifically charged that the relator had failed "to cause to be remedied and improved the unsatisfactory maintenance situation of the highway system of this state under your supervision and control, and to employ competent employees and subordinates in your department who could and would improve the maintenance of such highways and remedy the maintenance condition of said highway complained of" in a letter from Mr. MacDonald, chief of the Federal Bureau of Roads. This letter was embodied in the charges. The letter itself was not evidence of the charges made. The record shows the governor proceeded upon the theory that the statements made therein were true and that the letter itself proved them. It was on this basis the hearing was conducted. But this view is erroneous. The letter was used as a part of the complaint—this charge is based upon statements made in the letter; but in itself it is an unsworn, unproved docu-

ment and valueless as evidence. The letter alleges: inspection made during August, 1934; a claimed illegal legislative diversion of highway funds in 1933 which reduced the amount of money necessary to be provided by the state; that it was not until August, 1934 "the state maintenance department was being reorganized by a competent maintenance engineer;" and that the situation in this state with reference to the state highways arose "from two major causes: First, the diversion of special taxes raised for highway purposes to other purposes; and second, the breakdown in the maintenance organization and replacement with inexperienced and incompetent personnel during the period March 15, 1933 to August, 1934." In this respect we review the record only to find out whether there was legal evidence bearing on the question of neglect of duty. It is conceded that the relator did not become highway commissioner until January 23, 1935, and the charge against him shows that the condition of the highways complained of existed long before the relator took office. He was therefore not chargeable with the condition; neither do the charges specified by the governor hold him accountable for the condition. There is ample evidence to show a breakdown in the maintenance of the highways prior to August, 1934, and the charge of neglect of duty is based upon what the relator did or failed to do during the period between January 23, 1935 and March 26, 1935—the day the charges were served. It is true the record shows that there are over 6,500 miles of state highways maintained by the state highway department, that prior to August, 1934, over a wide range of this system there had been no proper maintenance either because of neglect, or failure of funds, or both. However the record shows the governor considered that the evidence to the effect that during the two winter months the relator was at the head of the department he had not gone over the highway system, nor caused certain windrows of gravel to be spread or removed on various sections of the highway system in order to reduce chances of danger, and not appeared before the governor to require additional funds showed neglect of duty even though explanation was made with reference to these features. It was for the governor to determine whether this was neglect of duty under all the circumstances of the case. It is not for this court to say that the evidence is trivial, that it does not support the charge, and that because the prosecution itself stated specifically at the hear-

ing regarding the good faith and honest endeavor of relator, as follows:

"Mr. Verrett: We don't deny that. So far as good faith is concerned. We know him well enough—

"Mr. Crum: You don't raise any question then about his good faith?

"Mr. Verrett: No, I don't think—I don't see why we should. I don't believe there is one man who knows him that believes Ole Olson was not in good faith."

the governor did not have the right to consider this action to be neglect of duty and act accordingly. As pointed out in Baker v. Lenhart, 50 N. D. 30, 47, 195 N. W. 16, the determination "whether based on sufficient evidence or not, is a determination arrived at in the exercise of its jurisdiction, and however erroneous it may be, it is not void for want of power in the court to render the decision." The responsibility of determining the facts from the evidence introduced rests solely upon the governor himself. He is the one who will be judged by the result as to whether it is fair and just. It is beyond our province in a certiorari proceeding to pass upon the weight or sufficiency of the testimony. It is not a question of what we would do in passing upon the evidence offered, were the matter before us on a trial de novo, or on appeal. Cases already cited are ample authority for this position.

From the foregoing it is clear the order of the governor must stand. The relator having been legally removed there is no necessity for further continuance of the restraining order and the restraining order therefore is vacated.

BURKE, Ch. J., and BURR, MORRIS and NUESSLE, JJ., and HOLT, Dist. J., concur.

CHRISTIANSON, J., being disqualified, did not participate, Hon. DANIEL B. HOLT, Judge of the First Judicial District, sitting in his stead.