STATE of North Dakota ex rel. Herman H. JOOS, Petitioner,

v.

William L. GUY, as Governor of the State of North Dakota, Respondent.

No. 8113.

Supreme Court of North Dakota.

Dec. 18, 1963.

Conmy & Conmy, Bismarck, for petitioner.

William S. Murray, Sp. Asst. Atty. Gen.,. Bismarck, for respondent.

BURKE, Judge.

On September 12, 1963, this Court issued' its writ of certiorari directed to the Honorable William L. Guy, Governor of the State· of North Dakota as respondent, and commanding the said respondent to certify and transmit to this Court all the records in a. proceeding instituted by the said respondent for the removal of the relator, Herman H. Joos, from his office as a member of the Board of Administration of the State of North Dakota, in order that this Court might review said proceedings. In compliance with our writ the record in said proceedings was filed in this Court on October 14, 1963, and a hearing was held thereon on· October 18, 1963.

From the record it appears that certain· charges and notice of hearing thereon were:

served on relator on or about August 13, 1963. These charges set forth twelve separate allegations of violations or neglect of statutory duties on the part of relator as causes for his removal from his office as a member of the Board of Administration. The relator filed an answer to the charges and a hearing thereon before the Honorable William L. Guy, Governor, was held commencing on September 3, 1963. Subsequent to the hearing Governor Guy made findings that ten of the twelve charges were sustained by the evidence submitted at the hearing and ordered that relator be removed from office.

 Upon this review relator urges that these proceedings are wholly void for want of jurisdiction. His first challenge to jurisdiction is founded upon Section 197 of the Constitution of North Dakota. This section provides:

"All officers not liable to impeachment, shall be subject to removal for misconduct, malfeasance, crime or misdemeanor in office, or for habitual drunkenness or gross incompetency in such manner as may be provided by law."

Relator says that this constitutional provision requires the enactment of a statutory procedure and conformity thereto in all proceedings for the removal of officers not subject to the impeachment. He urges that, since no procedure, which relates to a removal of a member of the Board of Administration, has been provided, the necessary constitutional prerequisite for these proceedings is absent and they are therefore absolutely void.

Relator is correct in his statement that there is no statute which sets forth in detail, the manner in which cause for the removal of a member of the Board of Administration shall be determined. The statute (Sec. 54–21–02 NDCC) merely provides:

"* * * The governor may remove any appointed member of the board for cause."

In formal removal proceedings we have considered similar statutes relating to the Highway Commissioner and Workmen's Compensation Commissioners. In each of these cases the applicable statutes provided for removal for cause but did not specify the manner in which the removal might be accomplished. In State ex rel. Olson v. Welford, 65 N.D. 522, 260 N.W. 593, the statute (Chapt. 125 Laws of N.D.1933, Sec. 1) provided that the Highway Commissioner "* * * shall be subject to removal by the Governor for neglect of duty or for nonfeasance or malfeasance in office." In State ex rel. Wenzel v. Langer, 64 N.D. 744, 256 N.W. 194, the statute (Chapter 314 Laws of N.D.1931) provided: "* * * Any or all of the Commissioners may be removed for cause." In each of these cases, however, this court held that jurisdictional requirements were met by a procedure which gave the charged official information as to the nature of the charges, and hearing thereon with an opportunity to cross-examine the witnesses appearing against him and to offer testimony in his own behalf. It is conceded by relator that the Wenzel and Olson cases support a conclusion that, where the legislature has conferred upon the Governor the power to remove the holder of an office, created by statute, for cause, but has not prescribed the manner in which such power shall be exercised, jurisdiction to remove may nevertheless be acquired by giving the official charged a notice of hearing and an opportunity to be heard. He contends, however, that this court in reaching its conclusions in the Wenzel and Olson cases did not give consideration to Section 197 of the Constitution and that we should reconsider these decisions in the light of this constitutional provision.

There are two parts to Section 197. The first part sets forth the grounds upon which officers not subject to impeachment may be removed. The second part provides that these officers may be removed "in such manner as may be provided by law." We have had occasion to construe the first

part of this section upon several occasions. In State ex rel. Moore v. Archibald, 5 N.D. 359, 66 N.W. 234, we held that Section 197 was not a limitation with respect to offices created by statute and that as to such offices the legislature could provide that the holders thereof could be removed for causes other than those mentioned in Section 197 or arbitrarily without any cause at all. This decision was affirmed in State ex rel. Wehe v. Frazier, 47 N.D. 314, 182 N.W. 545, and in State ex rel. Olson v. Welford, 65 N.D. 522, 260 N.W. 593.

The second part of Section 197 cannot be more extensive in its application than the first part. It follows that it is not a limitation with respect to offices created by statute but that it applies only to those officers whose offices are created by the Constitution itself. The failure of the legislature therefore to provide for the manner in which the Governor may remove a member of the Board of Administration does not void its grant of power to remove.

Secondly, it is urged that in the proceedings to remove relator from office the Governor did not regularly pursue the authority to remove conferred by Section 54–21–02 NDCC. The basis of this objection is that one of the elements of due process, an unbiased tribunal, was absent from the proceedings and that such proceedings are therefore void. Upon the face of the record, the proceedings for the removal of relator were instituted by the Governor. He signed the notice of hearing and the complaint. He heard the evidence and decided the case. Relator says that there can be no fair hearing before one who is at the same time, investigator, prosecutor and magistrate and that such a hearing denies due process of law.

■ In considering this question it must be remembered that due process of law in its usual constitutional sense is not involved. The legislature could, with respect to offices created by it, provide for arbitrary removal, if it saw fit to do so, State ex rel. Archibald v. Moore, supra;

State ex rel. Olson v. Welford, supra. It follows that, in creating an office, the legislature may provide for such tenure as it sees fit and for removal from the office for such causes and upon such conditions as may appear to it to be expedient. One who accepts appointment to such an office takes it subject to the limitations to which the legislature has subjected it. The question here, therefore, is not: Has due process of law in the constitutional sense been afforded the relator? but: Did the procedure followed in this case conform to the statutory requirements?

■ The statute simply provides: "The Governor may remove any appointed member of the board for cause." We have said that such a provision implied that the accused must have notice of the charges and a hearing thereon, State ex rel. Olson v. Welford, supra. There can be no question but that the Governor must be the judge of whether the evidence adduced at the hearing sustains the charges against the accused officer. It is relator's contention that this duty of passing upon the evidence bars the Governor from investigating the conduct of public officers and from instituting or directing the institution of removal proceedings against them, for the reason, that an investigation and decision to prefer charges, necessitates a pre-judgment upon the issues and denies the accused an impartial judge at the hearing.

■ We are satisfied that such a limitation upon the Governor's powers may not be implied from the statute. The executive power of the State is vested in the Governor by the Constitution (Sec. 71). Section 54–07–01 (subsection 2) NDCC provides: that the Governor, "Shall see that all offices are filled, and the duties thereof performed, or in default thereof, shall apply such remedies as the law allows. * * *" It is thus the Governor's duty to see to it that official duties are faithfully discharged, and in the event that he deems they are not so performed to take whatever steps are necessary to apply a statutory remedy, including the

institution of proceedings for removal. When the legislature conferred upon the Governor the power to remove certain appointive officers for cause, it could not have been its intention to deprive him of his power to supervise official conduct and to take whatever steps might be necessary to insure the efficient operation of the executive branch of government. It may well be that the placing of the power to prefer charges and institute removal proceedings in the hands of the person designated to hear evidence and determine the truth of such charges is not consistent with the best ideals of judicial due process. This is, however, what the legislature has done, and with respect to offices it has created, it had the power to do it.

■ Thirdly, relator urges that the charges served and filed in this proceeding do not state any grounds for removal from office.

In this connection it is pointed out that the statutes contained in Chapter 54–23 NDCC, state three specific grounds for removal of members of the Board of Administration and that the charges in this proceeding do not include any of these specified grounds. It is claimed that the grounds stated in the statutes are exclusive and that therefore the charges here are insufficient. Relator relies upon the general rule that where a statute provides that an officer may be removed for certain specified causes, the order of removal must be based upon some one or all of such causes. 43 Am.Jur. pp. 38, 39. This rule, however, has no application here. The sections referred to are Sections 54–23–49, 54–23–50 and 54–23–52 NDCC. Section 54–23–49 prohibits members of the board or its employees from being interested in any contract for any institution managed by the Board. Section 54–23–50, prohibits a board member and others from accepting any gift or gratuity from any person dealing in supplies which may be used in any of the institutions. Section 54–23–52 prohibits political activities by a member of the board or employees thereof. Each of such statutes provides that a violation of its provisions shall be a ground for removal from office. Each of the statutes includes within it terms not only members of the Board of Administration but all agents, employees or managers of any of the institutions under the control of the board. The subject matter of these statutes is not removal from office. They prohibit certain abuses which are detrimental to good management of state institutions and provide removal from office as a penalty for a violation thereof.

Furthermore, none of these sections was enacted as a part of the law creating the Board of Administration. Section 54–23–49 had its origin in Chapter 33, Laws of N.D. 1895 and related to trustees of State Institutions. Sections 54–23–50 and 54–23–52 were enacted as part of Chapter 62, Laws of N.D.1911, and related to the Board of Control.

These sections did not mention the Board of Administration until they were amended upon recommendation of the code commission and incorporated in the 1943 Code. Thus these statutes were not specifically applicable to the Board of Administration from the time of its creation by Chapter 71, Laws of N.D.1919, until 1943. The causes for removal stated therein cannot therefore be a limitation upon the power of the Governor to remove an appointed member of the board for cause, granted by the legislative act creating the board.

■■ Relator also contends that these proceedings were void because he had no opportunity to cross-examine his accuser. Relator did, of course, have the right to cross-examine all of the witnesses who testified at the hearing, and he exercised this right without any limitation whatever. This, however, did not satisfy relator's counsel, he wanted also to cross-examine the Governor who signed the complaint against the relator. It is apparently counsel's theory that the right of an accused to cross-examine includes not only the wit-

nesses who testify against him but also the individual who signed the complaint against him. Ordinarily the right to cross-examine extends only to witnesses who have testified. 98 C.J.S. Witnesses § 368d, p. 119. If the Governor, who signed the complaint, had decided the issues raised at the hearing, upon the basis of his personal knowledge, and not upon the evidence adduced at the hearing, the refusal of the right to cross-examine him might have rendered the proceeding unfair. In re Murchison (Mich.) 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942. In this case it does not appear that the Governor had any personal knowledge other than information received from the persons who testified and from the exhibits offered and received in evidence. In the circumstances we do not see how the Governor's refusal to submit to cross-examination made the hearing unfair.

Finally, it is contended by the relator that the evidence submitted at the hearing does not sustain the Governor's findings. Upon a review of the decision of the Governor, pursuant to a writ of certiorari, this court will inquire only to the extent of ascertaining if the Governor acted within his jurisdiction. It will therefore not review the sufficiency of the evidence or alleged erroneous orders of the Governor, but will examine the record only to determine if there is any proof therein to support the Governor's decision. State ex rel. Olson v. Welford, 65 N.D. 522, 260 N.W. 593.

In all there were 12 charges against the relator. The decision of the Governor found that charges, 1, 2, 3, 4, 5, 8, 9, 10 and 12 were sustained, that charge 6 was sustained in part, and that charges 7 and 11 were not sustained.

Charges 1 through 6 and charges 8, 9, 10 and 12 relate to the alleged neglect or misconduct of the relator as Chairman and a member of the Board of Administration in the performance of certain statutory duties in connection with the management of institutions under the control of the Board of Administration. It was alleged:

1. That a uniform system of accounting has not been adopted at the institutions under the control of the board as is required by Section 54–23–04 NDCC.

2. That officers of institutions under the control of the board have been permitted to purchase food supplies for their personal use from retail suppliers and charge the cost to the institutions in violation of Section 25–01–09 NDCC.

3. That minutes of the meetings of the Board of Administration have not been kept as required by statute. Section 54–23–16 NDCC.

4 & 5. That the State Hospital has been permitted to maintain four contingent funds in connection with its financial transactions in violation of Section 54–23–06 NDCC despite the fact that the violation had been called to relator's attention by the State Auditor.

6. That abuses existing at institutions under control of the board were not reported to the Governor as required by Section 54–23–17.

8. That monies belonging to the State and received by institutions under control of the board were not remitted monthly to the State Treasurer as required by Section 54–23–25 NDCC.

9. That the Superintendent of the State Hospital was permitted to expend large sums of State money in mailing several series of personal letters to a large mailing list.

10. That property belonging to institutions under the control of the board has been grossly over-insured.

12. That the relator personally approved a voucher for the payment of a bill in the sum of $2,281.50 when the amount actually due upon such account was $1,530.00.

It is relator's contention that these charges, with the exception of charges 3 and 9, allege non-feasance or misfeasance in connection with duties and responsibilities which are not the duties or responsibilities of the chairman or a member of the Board of Administration, but of the Director of Accounts and Purchases.

The Department of Accounts and Purchases was created by Chapter 372 Laws of N.D.1959. This statute which became effective July 1, 1961, provided that the department should supervise and administer the fiscal transactions of the various State departments, agencies, boards and commissions. Section 54–44–02 NDCC. The department was not empowered to supervise the fiscal transactions of State institutions under the control of the Board of Administration directly. With respect to these institutions the Department of Accounts and Purchases deals only with the Board of Administration. Sections 54–21–19, 54–23–06, 54–23–30, 54–23–36, 54–23–38, 54–23–40, 54–23–41 NDCC. Thus the Board of Administration is not relieved of its obligation to see to it that the heads of the institutions under its control observe the law. The heads of these institutions are appointed by and are directly responsible to the Board and to no one else. Section 54–23–02, 54–23–03 NDCC. It is therefore our view that the duties which relator is charged with violating are duties of a member of the Board of Administration.

The facts which it is alleged constitute a violation of duty are largely undisputed. For the most part they are established by audits and the other exhibits received in evidence.

With respect to charge 1, relator concedes that uniform systems of accounting have not been installed in all institutions under the control of the Board of Administration. He says, however, that they are uniform in so far as uniformity is practical and that this is all the statute requires.

Charge 2, is admitted in so far as the fact that food supplies for officers of institutions were in part purchased directly from retailers upon requisitions of such officers. It was stated, however, that this practice had continued for many years and was the practical way to make such purchases for the reason that wholesale stocking of items that were used only occasionally would be wasteful.

Charge 3, is denied by the relator. Mr. Fine, a member of the Board of Administration, testified that no minutes were kept of certain meetings of the board with the heads of institutions as required by Section 54–23–18 NDCC. He also stated that Mr. Henry, another member of the board, complained to the relator about the fact that minutes were not kept.

Charge 4, concerning excess contingent funds at the State Hospital, was established by the audit report of the State Auditor which was received in evidence. The pertinent part of the report reads:

"In our previous audit, reference was made to the fact that four contingent funds were in existence at the institution although the statute permitted only one. The three excess contingent funds were still being carried by the institution when this audit was commenced. They were closed out in the final days of the audit."

Charge 5, which alleges that expenditures were made from contingent funds for regular operating expenditures of the State Hospital in violation of Section 54–23–06 NDCC, is also established by the audit of the State Auditor. Concerning this matter the report states:

"Expenditures may be made from the contingent fund only—in case of actual emergency requiring immediate action to prevent loss or danger in the institution or the inmates thereof. See Section 54–2306 of the North Dakota Century Code. This exception and the law upon which it is based still seems to be consistently ignored."

Charge 6, was found to be sustained only in so far as it alleged that relator had failed to report to the Governor certain abuses and wrongs existing in the institutions. Concerning this charge relator testified that he stopped making reports at the Governor's request after Mr. Fine had been appointed to the board.

Charge 7, was found not to be sustained by the evidence.

Charge 8, to the effect that certain funds at the State Hospital belonging to the State were not forwarded to the State Treasurer as required by statute but were administered directly by hospital officials through a local bank is sustained by the report of the State Auditor.

Charge 9, which alleges that relator permitted the Superintendent of the State Hospital to mail at the state's expense, several letters of a personal nature to a large mailing list is sustained by the testimony of Mr. Fine and the mailing list "exhibit E". Mr. Fine testified that the mailings recurred often during a two month period and that after criticism in the press and in the legislature, relator ordered the practice stopped.

Charge 10, relating to over-insurance is sustained by the testimony of Mr. Fine and Mr. Rich, and the insurance policies which were received in evidence. This testimony was to the effect that 150 dairy cattle at the State Penitentiary were insured for the gross sum of $90,000.00 and the premium was calculated on this amount but that, by the terms of the policy, the maximum amount recoverable in case of loss was $300.00 per animal.

Charge 11, was held not to be sustained by the evidence.

Charge 12, is sustained by the testimony of Mr. Fine and Mr. Dewing. Each of these witnesses testified that relator approved a voucher for the payment of $2,281.50 for services rendered the State by George Mitchell when the value of such services had been previously determined by the Board of Administration to be the sum of $1,530.00. Mr. Dewing testified that he refused payment of the voucher at the request of Mr. Fine and that subsequently a voucher in the proper amount was issued, approved and paid.

■ Our examination of the record thus discloses that there is some evidence to sustain all of the charges which the Governor found had been established. The only question remaining therefore is whether the charges which the Governor found to be proved constitute cause for removal from office.

■ As has been heretofore stated the statute (Section 54-21-02) provides only that the Governor may remove any appointed member of the board for cause. Under such a grant of power the cause for removal must be a legal cause. State ex rel. Wehe v. Frazier, 47 N.D. 314, 182 N.W. 545. The cause must be one which affects the administration of the office and the rights and interest of the public. 67 C.J.S. Officers § 60, p. 248.

■ We have no doubt but that the failure of a public officer to conform to the statutes which prescribe the manner in which the duties of his office should be performed is an act which affects the rights and interest of the public.

■ In this case the statutory violations and irregularities charged relate, with two exceptions, to the acts of officers and employees who are appointed by and directly responsible to the Board of Administration. As chairman of the board, and spokesman therefor, relator owed it to the public to see to it that his office was efficiently administered. If the heads of institutions managed by the board, were allowed to follow illegal and irregular accounting and purchasing practices with the knowledge of the relator, or without knowledge, if lack of knowledge was due to relator's inefficiency in checking their work, facts,

which the Governor might, in his discretion, consider grounds for removal were established. State ex rel. Rockwell v. State Board of Education, 213 Minn. 184, 6 N.W. 2d 251, 261, 143 A.L.R. 503; State ex rel. Olson v. Welford, 65 N.D. 522, 260 N.W. 593.

It follows that the Governor had jurisdiction to make his order removing the relator from office, and that the relief asked for by the relator in this proceeding must be denied.

MORRIS, C. J., and TEIGEN and ERICKSTAD, JJ., concur.

STRUTZ, Judge (concurring specially).

I concur in the result reached by the majority of the court in this case. It is the only result which can be reached under the law and the previous decisions of this court. However, I believe this case points out a condition in our State which should be changed. But, if the situation presented by this proceeding should be corrected, that must be done by the Legislative Assembly and not by the courts.

We realize that it is extremely difficult, at the present time, to induce qualified businessmen to accept public appointment at salaries which the State of North Dakota offers. If such appointment, although made for a definite term of years, is actually going to be subject to the whims of a governor who might have political ideas which differ from those of an incumbent office holder, and if such office holder is to be subject to dismissal from his position every time there is a change of administration, which under our law may be every two years, it will be practically impossible to get qualified men to accept public appointment in this State

Without discussing the merits of this case, because such discussion would be useless in the light of the present state of the law and the decisions of this court, I would

point out that the possibility of having any governor remove a qualified public servant who has been appointed to a State office for a definite term of years, and to make such removal possible without good cause being shown, will surely result in making it very difficult to secure qualified men for public positions.

The relator in this case was appointed to the Board of Administration for a term of six years. His term has not expired. A governor is elected for a term of two years, and thus it is possible that there may be a change of administration every other year. At the present time, our law is such that the governor has the power to remove any appointed official for any reason which to him appears to be a good cause, regardless of how flimsy such cause may appear to an unbiased observer. As this court has said, in the case of State ex rel. Olson v. Welford, 65 N.D. 522, 260 N. W. 593, in discussing the sufficiency of the evidence to support a charge for removal of an appointed public official,

"It was for the Governor to determine whether this was neglect of duty under all of the circumstances of the case. It is not for this court to say that the evidence is trivial, that it does not support the charge, * * *."

Thus, even if in the opinion of the court the evidence is insufficient to warrant the removal of an officer, if there is any legal evidence in the record on which the governor might have acted, the courts can do nothing about such removal.

As was further pointed out in the case of Olson v. Welford, supra, under the law as we have it today and the decisions of our courts,

"The responsibility of determining the facts from the evidence introduced rests solely upon the Governor himself. He is the one who will be judged by the result as to whether it is fair and just. It is beyond our province in a certiorari proceeding to pass upon the

weight or sufficiency of the testimony. It is not a question of what we would do in passing upon the evidence offered, were the matter before us on a trial de novo, or on appeal. * * * "

Surely, where a citizen accepts public office—which usually is at a sacrifice to himself—he should be subject to removal for good cause only. And that cause should be substantial cause, not some cause which the governor might feel is ample to get rid of an office holder with whom he does not agree.

If this situation is to be corrected, however, it must be made right by the Legislative Assembly and not by the courts. The utter disregard of precedent by some courts today will only result in shaking the confidence of the public in our judicial system and, as stated by the late Justice Roberts of the United States Supreme Court in 1944, this would tend to bring the decisions of our courts "into the same class as a restricted railroad ticket, good for this day and train only." Smith v. Allwright, 321 U.S. 649, 669, 670, 64 S.Ct. 757, 768, 88 L. Ed. 987 at 1000. Such a condition would naturally result in confusion, and litigants would not know whether they could rely tomorrow on what the court has said today.